1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

6   IN RE: APPLICATION FOR          )  CR-15-XR-90304 LHK
    TELEPHONE INFORMATION NEEDED    )
    FOR A CRIMINAL INVESTIGATION,   )  SAN JOSE, CALIFORNIA

7                                   )
                                    )  JUNE 24, 2015

8                                   )
    _____ )  PAGES 1-56

9                                      **PAGES 49-56 SEALED**

10

11            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH

12          UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  JEFFREY B. SCHENK

16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA  95113

17

18   FOR THE DEFENDANT:    FEDERAL PUBLIC DEFENDER'S OFFICE
                           BY:  ELLEN V. LEONIDA

19                         555 12TH STREET, SUITE 650
                           OAKLAND, CALIFORNIA  94607

20

21

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595

24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
1    SAN JOSE, CALIFORNIA                    JUNE 24, 2015

2                      P R O C E E D I N G S

3         (COURT CONVENED AT 11:31 A.M.)

4             THE CLERK:  CALLING CASE 15-XR-90304, UNITED STATES

5    OF AMERICA VERSUS IN RE: APPLICATION FOR TELEPHONE INFORMATION

6    NEEDED FOR A CRIMINAL INVESTIGATION.

7             IF THE PARTIES WOULD PLEASE STATE THEIR APPEARANCES.

8             MS. LEONIDA:  GOOD MORNING, YOUR HONOR.

9    ELLEN LEONIDA FROM THE FEDERAL PUBLIC DEFENDER'S OFFICE.

10            MR. SCHENK:  GOOD MORNING, YOUR HONOR.  JEFF SCHENK

11   ON BEHALF OF THE UNITED STATES.

12            THE COURT:  OKAY.  GOOD MORNING AND WELCOME.

13        SO LET'S START OFF, I'D JUST LIKE TO UNDERSTAND WHEN THE

14   INFORMATION IS RECORDED.  SO I UNDERSTAND THAT WHEN A TEXT IS

15   SENT OR RECEIVED OR A PHONE CALL IS DIALLED OR RECEIVED, AT

16   THAT POINT THERE'LL BE A RECORDING OF THE CELL TOWER LOCATION

17   OF THAT DEVICE, BOTH AT THE BEGINNING AND THE END OF THE TEXT

18   OR THE CALL.

19        BUT I ALSO UNDERSTAND THAT WHENEVER THE PHONE IS ON, IT'S

20   CONSTANTLY GOING TO BE PINGING THE CELL TOWERS TO ALWAYS TRY TO

21   IDENTIFY WHAT IS THE BEST CELL TOWER FOR ANY PHONE CALL OR TEXT

22   THAT'S GOING TO BE RECEIVED TO BE SENT TO.

23        SO IS THAT INFORMATION RECORDED AS WELL?

24            MR. SCHENK:  YOUR HONOR, I DON'T BELIEVE THAT ALL OF

25   THE SERVICE PROVIDERS HAVE THE SAME ANSWER TO THAT QUESTION.
```

```
1                THE COURT:  UM-HUM.

2                MR. SCHENK:  I ALSO THINK THAT THE INFORMATION THAT

3      SERVICE PROVIDERS PROVIDE TO THE GOVERNMENT IS DIFFERENT.  EACH

4      SERVICE PROVIDER DOES NOT NECESSARILY PROVIDE THE SAME

5      INFORMATION.

6                FOR INSTANCE, BEGINNING AND END OF CALLS, IF IT'S A

7      LENGTHY CALL, THE CELL TOWER IS USED AT THE BEGINNING AND THE

8      END; OR IF THE INDIVIDUAL IS DRIVING IN A CAR AND, THEREFORE,

9      HITS OFF OF MANY TOWERS DURING THE LENGTH OF AN HOUR LONG CALL,

10     IN SOME INSTANCES A PROVIDER WOULD PROVIDE ONLY THE FIRST AND

11     LAST TOWER USED, AND THEN SOME PROVIDE TOWERS USED ALONG THE

12     WAY.

13               SO I DON'T THINK THAT THE COURT HAS BEFORE IT AN ANSWER TO

14     THAT QUESTION THAT IS CONSISTENT AMONG THE CELL TOWERS, CELL

15     COMPANIES.

16               THE COURT:  AND WHAT IS THE REASON FOR THE VARIANCE

17     IN TERMS OF IS IT JUST THAT CARRIERS KEEP DIFFERENT AMOUNTS OF

18     DATA?  OR IS IT THE REQUEST OF THE GOVERNMENT REQUESTS MORE

19     PRECISE INFORMATION?  WHAT DETERMINES -- OR IT'S JUST WHATEVER

20     THAT CARRIER TENDS TO RECORD AND OBTAIN?

21               MR. SCHENK:  THIS INFORMATION IS NOT KEPT AT THE

22     REQUEST OF THE GOVERNMENT.

23               THE COURT:  I UNDERSTAND.

24               MR. SCHENK:  THIS IS INFORMATION THAT VARIOUS

25     CARRIERS KEEP AND, AS A RESULT, MAKE DIFFERENT BUSINESS
```

1    DECISIONS ABOUT THE NEED FOR THE INFORMATION.

2         THE COURT'S RIGHT.  A CARRIER, IF IT MADE A VERY GENERAL

3    RETENTION POLICY, WOULD BE RETAINING A SIGNIFICANT AMOUNT OF

4    DATA.  IF THEY MAKE A MORE LIMITED RETENTION POLICY, THEY HAVE

5    TO MAINTAIN LESS DATA.

6         THE GOVERNMENT DOES NOT CONTROL THE AMOUNT OF DATA THAT

7    THE CARRIER RETAINS.

8              THE COURT:  DO WE HAVE ANY INFORMATION ON HOW LONG

9    CARRIERS RETAIN THE INFORMATION?

10             MR. SCHENK:  I BELIEVE THAT THAT ALSO IS DIFFERENT

11    AMONG CARRIERS.

12             THE COURT:  AND -- WELL, I'D LIKE -- SOME PORTION

13    WILL BE SORT OF OPEN, IN OPEN COURT, BUT THEN THERE ARE A

14    COUPLE OF QUESTIONS I'M JUST GOING TO ASK THE GOVERNMENT

15    BECAUSE IT'S ABOUT A SEALED APPLICATION, OKAY, AND I'LL HAVE TO

16    CLOSE THE COURTROOM FOR THAT PART, SO WE'LL JUST SAVE THAT FOR

17    THE END.  OKAY?

18             MR. SCHENK:  YES, YOUR HONOR.

19             THE COURT:  BUT BOTH SIDES AGREE, THERE'S NO WAY

20    TO -- IF THE PHONE IS ON -- WELL, OKAY.  SO THERE'S NO ANSWER

21    TO WHETHER THE INFORMATION IS RECORDED WHEN THE PHONE IS ON,

22    BUT NOT IN -- NOT IN USE IN TERMS OF RECEIVING OR SENDING A

23    TEXT OR A CALL?

24             MS. LEONIDA:  I THINK, YOUR HONOR, IN ADDITION TO IT

25    VARYING BY CARRIER -- FOR EXAMPLE, I THINK THAT SPRINT KEEPS

1    THOSE RECORDS.

2         BUT THE OTHER PIECE OF INFORMATION --

3              THE COURT:  YOU MEAN THEY KEEP THE RECORD -- WHEN THE

4    PHONE IS JUST CONSTANTLY PINGING THE CELL TOWER, I'M HERE,

5    YOU'RE SAYING THAT SPRINT KEEPS ALL OF THOSE PINGS?

6              MS. LEONIDA:  YES, YOUR HONOR.

7              THE COURT:  OKAY.

8              MS. LEONIDA:  I ALSO WANTED TO ADD THAT ACCORDING TO

9    AGENT LUNA'S DECLARATION SUBMITTED WITH THE REPLY IN THIS CASE,

10   THAT IT'S NOT JUST INCOMING AND OUTGOING CALLS AND INCOMING AND

11   OUTGOING TEXT MESSAGES AND VOICEMAILS, BUT ALSO WHEN DATA IS

12   BEING ACCESSED BY A PHONE THAT IT CONNECTS TO A TOWER.

13             THE COURT:  I UNDERSTOOD THAT.  BUT THE FOCUS OF THE

14   GOVERNMENT'S MOTION SEEMS TO BE MORE -- WELL, MAYBE WE CAN GET

15   INTO THAT.

16        NOW, WHAT ABOUT WHEN A PHONE IS ROAMING AND GOES ONTO A

17   DIFFERENT CARRIER'S NETWORK?  YOU DON'T REQUEST THAT

18   INFORMATION; RIGHT?  YOU JUST WANT THE ACTUAL CARRIER FOR THE

19   TARGET DEVICE?

20             MR. SCHENK:  THE RECORDS THAT THE CARRIER HAS THAT

21   ARE RESPONSIVE TO THE APPROVED 2703(D) ORDER WOULD BE PROVIDED

22   TO THE GOVERNMENT.  SO THE LINE WOULD BE DRAWN AT WHETHER THOSE

23   ARE RECORDS THAT, FOR INSTANCE, VERIZON OR SPRINT, THE

24   RECIPIENT OF THE ORDER, HAS, MAINTAINS, AND THEN, THEREFORE,

25   PROVIDES TO US.

```
1          THE COURT:  OKAY.  SO THEN THAT MAY ALSO VARY -- OR

2    WE JUST DON'T KNOW WHETHER ONE CARRIER, PRESUMABLY IF THEY

3    CHARGE ANOTHER CARRIER OR HAVE TO COMPENSATE ANOTHER CARRIER

4    FOR HANDLING THE CALL OF THE FIRST CARRIER'S USER BECAUSE

5    THEY'RE OUT OF SERVICE.

6          MR. SCHENK:  THERE'S JUST NO EVIDENCE BEFORE THE

7    COURT ON THAT OR ON THE SPRINT RETENTION POLICY OR ON ANY

8    PARTICULAR RETENTION POLICY.  THERE'S NO EVIDENCE BEFORE THE

9    COURT.

10          THE COURT:  OKAY.  NOW, YOU ARE NOT APPEALING

11    JUDGE LLOYD'S ORDER ON PROSPECTIVE CELL SITE INFORMATION, AND

12    WHY IS THAT?  DO YOU THINK THAT THAT IS LEGALLY DIFFERENT AND

13    DISTINCT THAN THE HISTORICAL CELL SITE INFORMATION?

14          MR. SCHENK:  I THINK THAT THEY'RE SEPARATE ARGUMENTS

15    THAT THE GOVERNMENT WOULD MAKE IN AN APPEAL OF THAT, THAT IT IS

16    INFORMATION WE COULD OBTAIN PURSUANT TO 2703(D), BUT IT'S NOT

17    NECESSARY FOR THIS COURT TO ENTERTAIN THAT PORTION OF IT AT

18    THIS TIME.

19          THE COURT:  OKAY.

20          MR. SCHENK:  IT RAISES --

21          THE COURT:  OKAY.  WHAT DO YOU THINK IS

22    CONSTITUTIONALLY DIFFERENT ABOUT PROSPECTIVE VERSUS HISTORICAL

23    CELL SITE INFORMATION?

24          MR. SCHENK:  HISTORIC IS RECORDS THAT ARE STORED BY

25    THE TELEPHONE COMPANY AT THE TIME THE JUDGE SIGNS THE 2703(D)
```

1    ORDER.

2         SO WHEN JUDGE LLOYD OR ANOTHER MAGISTRATE RECEIVES A

3    REQUEST FROM THE GOVERNMENT FOR RECORDS THAT ARE IN THE

4    POSSESSION OF A PHONE COMPANY, THOSE RECORDS ARE IN THE

5    POSSESSION OF THE PHONE COMPANY AT THE TIME THAT THE JUDGE IS

6    SIGNING THE ORDER AND, THEREFORE, ARE COMPLETELY WITHIN THE

7    GAMBIT OF 2703.

8         THE ARGUMENT THAT IS DIFFERENT FOR PROSPECTIVE IS AT WHAT

9    POINT DO THOSE RECORDS BEING STORED?  AND THAT'S AN ANALYSIS

10   THAT THIS COURT DOES NOT NEED TO MAKE BECAUSE THE GOVERNMENT

11   ISN'T APPEALING THE PROSPECTIVE PORTION OF OUR ORIGINAL REQUEST

12   TO THE MAGISTRATE.

13        THE COURT:  AND WHERE CAN I LOOK THAT IT MATTERS

14   WHETHER THE INFORMATION IS STORED OR NOT?  I MEAN, ARE YOU

15   SAYING THAT SMITH AND MILLER ONLY APPLY IF THE THIRD PARTY IS

16   STORING THE INFORMATION AND IT'S LIMITED TO THAT INSTANCE, ONLY

17   IF THE INFORMATION IS STORED?

18        MR. SCHENK:  NO.  IT WASN'T NECESSARY FOR SMITH AND

19   MILLER'S HOLDINGS THAT THAT INFORMATION WAS NOT ONLY

20   TRANSMITTED, BUT ALSO STORED WITH THE THIRD PARTY.  THE THIRD

21   PARTY DOCTRINE SUGGESTS THAT INFORMATION THAT'S PROVIDED TO A

22   THIRD PARTY, EVEN FOR LIMITED PURPOSES, IS --

23        THE COURT:  RIGHT.  SO THAT WOULD APPLY TO

24   PROSPECTIVE, SO WHY ARE YOU SAYING IT'S DIFFERENT THAT -- IF

25   YOU VOLUNTARILY CONVEY INFORMATION TO A THIRD PARTY AND THAT

```
 1    ALL -- THAT AUTOMATICALLY MAKES THAT INFORMATION THEN SUBJECT

 2    TO, AT LEAST TO THE GOVERNMENT, THAT SEEMS LIKE THAT THIRD

 3    PARTY DOCTRINE WOULD APPLY REGARDLESS OF WHETHER INFORMATION IS

 4    HISTORIC AND STORED BY A THIRD PARTY OR PROSPECTIVE; RIGHT?

 5            MR. SCHENK:  I AGREE WITH YOU.  I THINK WE COULD GET

 6    PROSPECTIVE UNDER THE STORED COMMUNICATIONS ACT BECAUSE WE

 7    WOULDN'T GET IT UNTIL IT IS OBTAINED BY THE TELEPHONE COMPANY

 8    AND STORED.

 9         THE QUESTION FOR THIS COURT, THOUGH --

10            THE COURT:  SO YOU'RE SAYING THAT LEGALLY THE

11    INFORMATION HAS TO BE STORED?  OTHERWISE YOU CAN'T GET IT

12    THROUGH THIS SPECIFIC AND ARTICULABLE REASON?

13            MR. SCHENK:  THAT'S WHAT THE STATUTE, THE STORED

14    COMMUNICATIONS ACT AND THE AMENDMENTS THAT CALEA MADE TO IT

15    SUGGEST THAT, YES, ONCE THAT INFORMATION IS TRANSMITTED AND

16    STORED BY THE TELEPHONE COMPANY, IF THE GOVERNMENT MEETS THE

17    SPECIFIC AND ARTICULABLE FACTS STANDARD, THAT INFORMATION IS --

18    SHALL BE PROVIDED TO THE GOVERNMENT.

19            THE COURT:  I GUESS I -- I STILL AM NOT CLEAR.  ARE

20    YOU SAYING THEN THAT IT HAS TO BE STORED IN ORDER FOR YOU TO

21    GET IT?  BECAUSE THAT WOULD MEAN THAT YOU WOULD NOT BE ENTITLED

22    TO GET THE PROSPECTIVE INFORMATION BECAUSE IT HASN'T BEEN

23    STORED YET.

24            MR. SCHENK:  IT'S -- WELL, AGAIN, THE "YET" IS JUST A

25    FACTION OF THE -- IT'S A FACTOR OF THE DATE OF THE SIGNING OF
```

1    THE ORDER.  IT CERTAINLY IS STORED, EVEN PROSPECTIVE, BEFORE

2    IT'S GIVEN TO THE GOVERNMENT.  IT'S STORED, AND I'M NOT SURE OF

3    THE TIME LAPSE, MOMENTARILY OR RELATIVELY QUICKLY, THEN

4    PROVIDED TO THE GOVERNMENT.

5         BUT IN BOTH INSTANCES, HISTORIC AND PROSPECTIVE, IT'S

6    STORED INFORMATION OF THE PHONE COMPANY BEFORE IT'S PROVIDED TO

7    THE GOVERNMENT.

8              THE COURT:  LET ME LET YOU RESPOND TO THAT.

9              MS. LEONIDA:  THANK YOU, YOUR HONOR.

10        THE REAL QUESTION, BEFORE BUSINESS RECORDS OR WHETHER IT'S

11   STORED, IS WHETHER CITIZENS HAVE A LEGITIMATE EXPECTATION OF

12   PRIVACY IN THIS INFORMATION.  JUST BECAUSE IT'S CALLED THE

13   STORED COMMUNICATION ACT DOESN'T MEAN THAT ANYTHING THAT'S

14   STORED IS SUBJECT TO IT.

15        THE FOURTH AMENDMENT REQUIRES THIS COURT TO DETERMINE

16   WHETHER IT'S SOMETHING THAT PEOPLE HAVE A SUBJECTIVE AND

17   REASONABLE EXPECTATION FOR PRIVACY ON.

18             THE COURT:  LET ME INTERRUPT YOU HERE.  HOW DO YOU

19   RESPOND TO THE PRIVACY POLICY OF AT&T AND T-MOBILE?  BECAUSE

20   THEY DO NOTIFY THEIR USERS THAT THEY ARE COLLECTING LOCATION

21   INFORMATION, SO HOW DO YOU HAVE A REASONABLE EXPECTATION OF

22   PRIVACY WHEN YOU'RE ON NOTICE THAT THAT INFORMATION IS BEING

23   COLLECTED?

24             MS. LEONIDA:  I HAVE A COUPLE OF RESPONSES.

25             THE COURT:  OKAY.

1          MS. LEONIDA:  ONE, THE MOST BASIC RESPONSE IS THAT

2     THE QUON CASE ADDRESSING E-MAILS THAT WERE SENT TO POLICE

3     OFFICERS ON THEIR DEPARTMENT ISSUED TELEPHONES, THAT THEY HAD A

4     POLICY THAT WAS EVEN MORE EXPLICIT, THAT NOTIFIED THE POLICE

5     OFFICER THAT ANY COMMUNICATIONS THEY RECEIVED WEREN'T PRIVATE,

6     THAT THEY WEREN'T CONFIDENTIAL, THAT THEY -- IT EXPRESSLY SAID,

7     "YOU HAVE NO EXPECTATION OF PRIVACY IN THESE E-MAILS," AND THE

8     COURT HELD, NONETHELESS, BECAUSE OF THE NATURE OF THE E-MAILS,

9     THAT THERE WAS AN EXPECTATION OF PRIVACY.

10          THE COURT:  BUT IN THAT CASE WEREN'T THEY LOOKING AT

11     THE CONTENT?

12          MS. LEONIDA:  YES.

13          THE COURT:  OKAY.  SO WOULDN'T THAT BE A

14     DISTINGUISHING FACTOR HERE?  WE'RE NOT ASKING FOR THE CONTENT

15     OF THE TEXT OR THE PHONE CALL.  WE'RE ASKING JUST FOR THE

16     EXISTENCE OF THAT THIS CALL HAPPENED AT THIS TIME FROM THIS

17     LOCATION.  DOES THAT MATTER OR NOT?

18          MS. LEONIDA:  I THINK THAT THE HISTORICAL CELL SITE

19     INFORMATION IS MUCH MORE ANALOGOUS TO CONTENT.  I THINK IN

20     TERMS OF WHETHER -- IN TERMS OF THE IMPACT THAT THE NOTICE HAS,

21     THE FACT THAT IT -- THAT THE NOTICE DOESN'T MATTER FOR CONTENT,

22     I THINK THAT THAT DOES TRANSLATE TO THIS CONTEXT.

23          IF -- CONTENT, WHICH I THINK EVERYONE AGREES THERE'S AN

24     EXPECTATION OF PRIVACY IN, IF THAT EXPECTATION CAN'T BE

25     STRIPPED BY EXPRESSLY SAYING, "THIS ISN'T YOUR PHONE, YOU HAVE

1    NO EXPECTATION OF PRIVACY IN IT," I THINK THE SAME WOULD APPLY

2    TO HISTORICAL CELL SITE INFORMATION.

3         I THINK THAT THE USE OF CELL PHONES IS SO UBIQUITOUS THAT

4    I THINK THE MORE SALIENT FACTOR IS WHAT A REASONABLE PERSON

5    THINKS.

6         WE KNOW FROM RESEARCH SUBMITTED TO THE COURT, 82 PERCENT

7    OF AMERICANS THINK THAT THEIR CELL SITE LOCATION INFORMATION IS

8    MORE PRIVATE THAN THE CONTEXT OF THEIR TEXT MESSAGES, IT'S MORE

9    PRIVATE THAN THEIR RELIGIOUS AND POLITICAL AFFILIATIONS, MORE

10   PRIVATE THAN A LOT OF THINGS THAT THE GOVERNMENT SAYS WOULD BE

11   ENTITLED TO PRIVACY PROTECTION.

12        AND IF THE COURT CONSIDERS THE RECENT SUPREME COURT

13   OPINIONS, JONES AND RILEY, ADDRESSING THE DIFFERENCES BETWEEN

14   DIGITAL AND PHYSICAL EVIDENCE, I THINK THAT THAT EXPECTATION IS

15   A REASONABLE ONE.

16        IN JONES, FOR EXAMPLE, THE GPS TRACKER THAT WAS PLACED ON

17   THE CAR, ACCORDING TO THE FIVE CONCURRENCES, REVEALED A

18   DETAILED AND COMPREHENSIVE PICTURE OF WHERE THE DRIVER OF THAT

19   CAR WENT.

20        AND ONE THING THAT'S CRITICAL HERE IS THAT CELL PHONES,

21   AGAIN, AS THE RESEARCH BEARS OUT, ARE WITH PEOPLE ALL THE TIME.

22        THE GOVERNMENT IS SEEKING INFORMATION FOR A TWO MONTH

23   PERIOD FOR A DEVICE THAT PEOPLE KEEP WITH THEM 24 HOURS A DAY,

24   7 DAYS A WEEK.

25        UNLIKE A CAR, WHICH GETS PARKED AND THEY CAN GO ANYWHERE

1    WITHIN TWO BLOCKS, THEY CAN TAKE PUBLIC TRANSPORTATION, A CELL

2    PHONE IS SOMETHING THAT A PERSON HAS ON THEIR PERSON MOST OF

3    THE TIME AT HOME, AT CHURCH, AT WORK, AT THE DOCTOR'S OFFICE,

4    IN FEDERAL COURT.

5            AND I THINK THAT THAT MAKES IT MUCH MORE ANALOGOUS TO

6    CONTENT THAN TO SUBSCRIBER INFORMATION BECAUSE THE WEALTH OF

7    INFORMATION THAT THAT REVEALS ABOUT A PERSON IS MUCH MORE

8    ANALOGOUS TO THE CONTEXT OF THEIR TEXT MESSAGES AND THAT'S WHY

9    THE 82 PERCENT OF PEOPLE RESEARCHED BY PEW SAID THAT THEY WOULD

10   RATHER HAVE YOU READ THEIR TEXT MESSAGES THAN SEE WHERE THEY'RE

11   GOING ALL THE TIME.

12           THE COURT:  BUT THERE'S NO OTHER CASE THAT'S FOUND

13    THAT IT'S EQUIVALENT TO CONTENT, RIGHT?  I'D BE THE FIRST ONE

14    TO DO THAT?

15           MS. LEONIDA:  THERE IS NOT, YOUR HONOR.

16           THE COURT:  OKAY.  SO LET ME TRY TO CLARIFY MY

17   UNDERSTANDING OF YOUR POSITION.  SO YOUR POSITION IS THE THIRD

18   PARTY DOCTRINE IS STILL GOOD LAW, BUT THAT JONES AND RILEY HAVE

19   CREATED EXCEPTIONS BASED ON CHANGING TECHNOLOGY?  OR HOW DO YOU

20   SQUARE YOUR POSITION?

21           MS. LEONIDA:  WELL, MY POSITION IS TWO-FOLD.

22           THE COURT:  YEAH.

23           MS. LEONIDA:  I THINK ON ONE LEVEL, EVEN THE SMITH

24   CASE IN FOOTNOTE 5 RECOGNIZED THAT WE COULD GET TO A POINT, AS

25   A SOCIETY, WHERE EVEN A SUBJECTIVE -- EVEN THE LACK OF A

1    SUBJECTIVE EXPECTATION OF PRIVACY REQUIRES COURTS TO DO A

2    NORMATIVE INQUIRY, TO MAKE SURE THAT THE EXPECTATION OF PRIVACY

3    THAT WE'RE SAYING IS REASONABLE FOR FOURTH AMENDMENT PURPOSES

4    IS ACTUALLY A REASONABLE ONE.

5        THEY GAVE THE EXAMPLE OF IF THERE WAS A TELEVISION

6    ANNOUNCEMENT THAT SAID THAT THE POLICE COULD COME INTO YOUR

7    HOUSE AND SEARCH IT, THAT DOESN'T MEAN THAT THEY CAN JUST

8    BECAUSE EVERYBODY IS TOLD THAT THEY CAN.

9        AND I THINK THAT THAT'S ALSO A FACTOR WITH THE COURT'S

10   CONCERN IN THE PRIVACY POLICIES.  IF THE CELL PHONE CARRIERS

11   SENT OUT NOTICES TO ALL OF THEIR SUBSCRIBERS THAT THEIR CONTENT

12   WAS NO LONGER PRIVATE, THAT DOESN'T MEAN THAT THE GOVERNMENT

13   DOESN'T NEED A WARRANT TO GET IT.

14       AND I THINK THAT THE KIND OF NORMATIVE ANALYSIS THAT THAT

15   FOOTNOTE REFERRED TO IS SOMETHING THAT WE HAVE TO DO, BUT

16   WITHOUT EVEN UNDERTAKING THAT, I THINK THAT UNDER SMITH AND

17   MILLER, THIS IS VERY DIFFERENT KIND OF INFORMATION.

18       IN SMITH AND MILLER, THE INFORMATION AT ISSUE WAS

19   INFORMATION THAT THE CONSUMER VOLUNTARILY CONVEYED TO THE BANK

20   AND TO THE PHONE COMPANY.  THE CONSUMER DIALLED THE PHONE

21   NUMBER, THEY DID IT -- THEY GAVE IT TO THE PHONE COMPANY FOR

22   THE EXPRESS PURPOSE OF ACHIEVING THEIR AIM, WHICH WAS CALLING A

23   PERSON.

24       IN MILLER, THE CONSUMER WRITES A CHECK FOR THE PURPOSE OF

25   HAVING THE BANK CASH THAT CHECK.

1      WHEN THE PHONE COMPANY SENDS A BILL, IT HAS A LIST OF THE

2   NUMBERS THAT YOU'VE ASKED THE PHONE COMPANY TO DIAL FOR YOU SO

3   YOU CAN TALK TO PEOPLE.

4      SIMILARLY WITH MILLER.  WHEN THE BANK STATEMENT COMES,

5   IT'S A LIST OF CHECKS THAT YOU'VE ASKED THE BANK TO CASH FOR

6   YOU, AS OPPOSED TO THIS INFORMATION, WHICH IS NOT ONLY

7   PASSIVELY CONVEYED TO A THIRD PARTY, WHICH THE FORRESTER CASE,

8   THE NINTH CIRCUIT CASE SAID WOULD BE DIFFERENT, IT'S NOT ONLY

9   PASSIVELY CONVEYED, BUT THE PURPOSE OF IT IS DIFFERENT.

10      PEOPLE CARRY CELL PHONES IN ORDER TO MAKE CALLS.  THEY

11   DON'T ANTICIPATE THAT THEY'RE GOING TO BE USED AS TRACKING

12   DEVICES.

13      AND THAT ALSO EXEMPTS THIS FROM THE THIRD PARTY DOCTRINE

14   OF SMITH AND MILLER.

15      THE COURT:  SO LET ME ASK YOU, HOW CAN I RELY ON

16   JONES WHEN THAT WAS DECIDED ON TRESPASS LAW AND NOT BASED ON A

17   KATZ REASONABLE EXPECTATION OF PRIVACY ANALYSIS?  HOW CAN I SAY

18   THAT UNDERMINES SMITH AND MILLER?

19      MS. LEONIDA:  BECAUSE IF THE -- IF YOUR HONOR LOOKS

20   AT THE CONCURRENCES TOGETHER, THE MAJORITY OF THE SUPREME COURT

21   JUSTICES DID ENGAGE IN A KATZ ANALYSIS.  AND FIVE SUPREME COURT

22   JUSTICES, WHEN THEY ENGAGED IN THAT ANALYSIS, FOUND THAT THE

23   EXPECTATION OF PRIVACY ESTABLISHED BY KATZ WAS VIOLATED BY

24   LONG-TERM LOCATION MONITORING BY THE GOVERNMENT.

25      JUDGE SOTOMAYOR WROTE SEPARATELY BECAUSE SHE AGREED WITH

1    BOTH.  SHE WANTED TO BE CLEAR THAT SHE ALSO THOUGHT THAT THERE

2    WAS A PHYSICAL TRESPASS AT ISSUE.

3         BUT THE MAJORITY OF THE SUPREME COURT DID WRITE OPINIONS

4    SAYING THAT LONG-TERM ELECTRONIC SURVEILLANCE VIOLATES THE

5    FOURTH AMENDMENT.

6         THE COURT:  AND LET ME SEE IF I JUST UNDERSTAND YOUR

7    POSITION CORRECTLY.  SO YOU'RE SAYING THE USERS ARE VOLUNTARILY

8    CONVEYING THEIR INFORMATION TO THE CARRIER, BUT THAT THE

9    CARRIER -- I MEAN, ARE YOU BASICALLY ASKING FOR A SORT OF

10   FRONTAL ATTACK ON THE THIRD PARTY DOCTRINE SAYING EVEN THOUGH

11   THERE MAY HAVE BEEN A CONSENSUAL, VOLUNTARY CONVEYANCE TO THE

12   PHONE SERVICE OPERATOR, THAT THAT THEN SHOULD NOT BE TURNED

13   OVER TO THE GOVERNMENT?  I MEAN --

14        MS. LEONIDA:  NO, YOUR HONOR.

15        THE COURT:  IT'S SOMEWHAT UNCLEAR.

16        MS. LEONIDA:  NO, YOUR HONOR.  I'M SORRY.

17        THE COURT:  OKAY.

18        MS. LEONIDA:  I'M SAYING THAT THE INFORMATION, THE

19   CELL SITE LOCATION INFORMATION IS NOT VOLUNTARILY CONVEYED TO

20   THE CARRIER.

21        THE COURT:  EVEN WHEN SOME OF THE POLICIES ARE VERY

22   EXPLICIT ABOUT THAT INFORMATION BEING COLLECTED AND RETAINED?

23   IT DOESN'T SAY HOW LONG, BUT IT DOES SAY THAT -- I MEAN,

24   OBVIOUSLY SOME OF IT IS LIKE THE PHONE NUMBERS IN SMITH BECAUSE

25   YOU'RE BEING CHARGED, YOU KNOW, FOR THE TEXT, YOU'RE BEING

1    CHARGED FOR THE CALL, SO SOME OF IT THE USER KNOWS IS BEING

2    RECORDED AND RETAINED, AT LEAST FOR THE PURPOSES OF BILLING,

3    JUST LIKE IN SMITH.

4         MS. LEONIDA:  AND I THINK THAT THE PHONE NUMBERS THAT

5    ARE DIALED ARE JUST LIKE IN SMITH, AND THAT'S INFORMATION THAT

6    IS QUALITATIVELY DIFFERENT THAN CELL SITE LOCATION INFORMATION.

7         WHEN PEOPLE MAKE A CALL, THEY'RE NOT NOTIFIED WHAT TOWER

8    THEIR PHONE IS HITTING TO MAKE THE CALL, MUCH LESS WHAT TOWER

9    THE CALL ENDS AT.

10        THE COURT:  UM-HUM.

11        MS. LEONIDA:  WHEN PEOPLE HAVE A PHONE IN THEIR

12   POCKET THAT RECEIVES A TEXT MESSAGE THAT THEY DON'T HEAR OR

13   VOICEMAIL THAT THEY IGNORE, THEY'RE NOT NOTIFIED BY THE PHONE

14   COMPANY THAT THAT INFORMATION IS BEING RECORDED, MUCH LESS THAT

15   IT CAN LATER BE GIVEN TO LAW ENFORCEMENT.

16        THE TECHNOLOGY THAT EXISTED WHEN SMITH AND MILLER WERE

17   DECIDED IN 1976 AND 1979 I THINK IS COMPLETELY INADEQUATE TO

18   ADDRESS THE TECHNOLOGY THAT'S BEFORE THIS COURT.

19        IN THAT CASE, THERE WAS A NUMBER -- THE COURT MADE AN

20   ANALOGY TO WHEN YOU WOULD CALL AN OPERATOR AND ASK THEM TO

21   CONNECT YOU ORALLY TO A NUMBER THAT YOU READ THEM OUT LOUD.

22        IT IS -- IT'S COMPLETELY DIFFERENT THAN THIS WHERE THE

23   CONSUMER -- I MEAN, MAYBE SOME COMPANIES HAVE A NOTICE THAT

24   THEY PUT ONLINE THAT I IMAGINE VERY FEW PEOPLE ACTUALLY READ

25   THAT HAS, IN THE MIDDLE OF HUNDREDS OF PAGES OF NOTICES, THE

1    FACT THAT THIS INFORMATION IS STORED.

2         BUT IF THE COURT LOOKS AT THE RESEARCH, I THINK THAT IT

3    IS -- I DON'T THINK IT'S AN HONEST ASSESSMENT OF WHAT PEOPLE

4    REALLY EXPECT IN TERMS OF PRIVACY TO SAY THAT THEY THINK THAT

5    EVERY TIME THEY MAKE A CALL, THE PHONE COMPANY IS NOTING WHERE

6    THEY ARE; THAT EVERY TIME THEY RECEIVE A TEXT, THE PHONE

7    COMPANY IS NOTING WHERE THEY ARE; THAT WHENEVER THEY CHECK THE

8    WEATHER ON THE WAY TO A PLACE, THAT SOMEBODY DOCUMENTS THAT AND

9    AGGREGATES ALL OF THAT INFORMATION AND CAN JUST TURN IT OVER TO

10   ANYONE.

11        THE COURT:  SO LET ME ASK MR. SCHENK, DO YOU THINK

12   IT'S A REASONABLE BURDEN ON CITIZENS TO SAY, "JUST DON'T USE

13   ANY DEVICE, DON'T USE ANY CARRIER, THEY'RE ALL GOING TO COLLECT

14   THE INFORMATION AND RETAIN IT AND TURN IT OVER TO THE

15   GOVERNMENT, SO YOU CAN ALWAYS JUST OPT OUT"?  I MEAN, THAT

16   SEEMS LIKE THE ONLY SOLUTION HERE.

17        MR. SCHENK:  A FEW THOUGHTS.  FIRST, THAT'S WHAT THE

18   DAVIS COURT SUGGESTED WAS CARRYING A CELL PHONE --

19        THE COURT:  DO YOU THINK THAT'S A REASONABLE BURDEN

20   IN THIS COUNTRY, THAT WE SHOULD TELL PEOPLE TO NOT USE A CELL

21   PHONE --

22        MR. SCHENK:  IT WASN'T REQUIRED --

23        THE COURT:  -- IF YOU WANT YOUR PRIVACY RIGHTS?

24        MR. SCHENK:  PEOPLE MAKE THAT SAME DECISION WHEN THEY

25   USE CREDIT CARDS OR THEY USE BANK ACCOUNTS.

1    I MEAN, THE IDEA THAT -- YOU CAN'T REALLY LIVE IN SOCIETY

2    TODAY WITHOUT PARTICIPATING IN THE BANKING SYSTEM.  THAT IS

3    INFORMATION THAT THE GOVERNMENT OBTAINED WITH A LOWER BURDEN.

4    RECALL THAT WHEN THE CALEA AMENDMENT CHANGED 2703, WHAT

5    THEY DID WAS CREATE THIS INTERMEDIATE LEVEL OF SCRUTINY TO

6    OBTAIN THIS TYPE OF INFORMATION, SPECIFIC AND ARTICULABLE

7    FACTS, AND THE LEGISLATIVE HISTORY CONCERNING THAT AMENDMENT

8    SUGGESTED THAT PEOPLE WERE AWARE THAT LOCATION INFORMATION WAS

9    INCLUDED WITH IT AND THAT THE ADDITIONAL PROTECTION, THAT IS,

10   THIS NEUTRAL MAGISTRATE, THE ARBITER BETWEEN THE GOVERNMENT AND

11   THE PHONE COMPANY, WAS GOING TO PLAY A ROLE OF PROTECTING THE

12   LIMITED PRIVACY INTERESTS IN THIS INFORMATION THAT WAS

13   RECOGNIZED AT THE TIME.

14   BUT TO SAY THAT --

15   THE COURT:  LET ME ASK YOU A QUESTION, THOUGH.  YOU

16   WANT TO HAVE INFORMATION ABOUT WHERE SOMEONE'S BEEN FOR 60

17   DAYS.  DO YOU THINK THAT OVER A 60-DAY WINDOW, A PERSON

18   CARRYING A CELL PHONE ON THEIR BODY IS GOING TO ENTER A PRIVATE

19   BUILDING, ENTER A HOME, OR NOT?

20   MR. SCHENK:  I THINK THEY WILL --

21   THE COURT:  OR DO YOU THINK THEY'RE ALWAYS GOING TO

22   BE OUT AND ABOUT IN PUBLIC SPACES?

23   MR. SCHENK:  I THINK THEY'LL BE IN PUBLIC AND PRIVATE

24   SPACES.

25   THE CASE LAW REGARDING THE THIRD PARTY DOCTRINE DOES NOT

1    MAKE A DISTINCTION THERE.

2         PEOPLE USE CREDIT CARDS IN VARIOUS PLACES AND WE OBTAIN

3    INFORMATION FROM CREDIT CARDS THAT SHOWS LOCATION.

4         THE COURT:  OKAY.  BUT IN THE THIRD PARTY DOCTRINE,

5    THEY WERE TALKING ABOUT GETTING LANDLINE NUMBERS DIALLED FOR A

6    THREE-DAY WINDOW.  I DON'T THINK THEY WERE SAYING FOLLOW A

7    HUMAN BODY FOR 60 DAYS EVERYWHERE THAT PERSON GOES.  RIGHT?

8         MR. SCHENK:  IN SMITH, IN THE WORLD OF LANDLINES --

9    AT THAT POINT WE ACTUALLY KNEW THEY WERE IN THEIR HOME.

10        THE COURT:  UM-HUM.

11        MR. SCHENK:  SO TO NOW DISCUSS THAT, YOU KNOW,

12   TECHNOLOGY IS EVOLVING TO A PLACE WHERE WE FEAR PEOPLE ARE

13   GOING TO CARRY CELL PHONES WITH THEM EVERYWHERE, INCLUDING INTO

14   THEIR HOME, AND CELL SITE INFORMATION WILL THEN REVEAL THAT A

15   PERSON WAS IN THEIR HOME IS ACTUALLY A LONG WAY BACK TO THE

16   WORLD WE WERE IN WHEN THE ONLY LOCATION INFORMATION FOR HOMES

17   WAS IN THE HOME.

18        THERE WAS NO FEAR IN SMITH THAT WE WERE REVEALING THE

19   PERSON'S LOCATION IN THEIR PRIVATE SPACE BECAUSE THEY WERE

20   MAKING A CALL FROM THEIR HOME.

21        THAT'S NOT THE LINE THAT THE CASES DRAW IN SUGGESTING THAT

22   A WARRANT IS REQUIRED.

23        WHAT THE COURT SAID A MOMENT AGO WAS TRUE.  IF THIS COURT

24   FOUND THAT A WARRANT WAS REQUIRED FOR THIS TYPE OF INFORMATION,

25   NON-CONTENT INFORMATION, IT WOULD BE THE FIRST COURT TO FIND

1      THAT WAY.

2          THREE CIRCUIT COURTS THAT HAVE RULED ON IT HAVE ALL GONE

3      THE OTHER WAY ON IT AND, IN FACT, THE THIRD CIRCUIT QUESTIONED

4      THE VOLUNTARINESS OF THE TRANSFER OF THE INFORMATION.

5          JUDGE TASHIMA, SITTING BY DESIGNATION IN THE THIRD

6      CIRCUIT, WROTE A CONCURRENCE TO SAY, "I THINK IT'S UNREASONABLE

7      TO THINK THAT THIS INFORMATION ISN'T VOLUNTARILY SHARED.  BUT

8      THAT'S NOT NECESSARY FOR WHAT WE DECIDED BECAUSE THE OPINION IN

9      THE CASE VIEWED THIS INFORMATION AS NON-CONTENT, ACCEPTABLE

10     UNDER THE SPECIFIC AND ARTICULABLE FACTS STANDARD, REGARDLESS

11     OF THE VOLUNTARINESS OF THE TRANSFER BY THE PHONE USER TO THE

12     PHONE COMPANY."

13          THE COURT:  SO ONE OF THE AMICI -- AND I'M SORRY, I

14     CAN'T -- I THINK IT WAS EFF -- MENTIONED -- IT WAS ON PAGE 12

15     OF THEIR BRIEF -- MENTIONED THAT, YOU KNOW, IN CALIFORNIA,

16     THERE IS A RECOGNIZED REASONABLE EXPECTATION OF PRIVACY IN YOUR

17     CELL SITE INFORMATION, SO STATE LAW ENFORCEMENT CAN'T GET THAT

18     INFORMATION THROUGH A PEN REGISTER.  THEY HAVE TO GO AND GET A

19     PROBABLE CAUSE SEARCH WARRANT.

20          WHAT ABOUT THEIR ARGUMENT THAT, YOU KNOW, AT LEAST PEOPLE

21     IN CALIFORNIA HAVE A DIFFERENT REASONABLE EXPECTATION OF

22     PRIVACY THAN PERHAPS PEOPLE IN ANOTHER STATE?

23          MR. SCHENK:  NOTHING BINDING ON THE COURT.

24          AND OTHER CIRCUITS THAT HAVE VIEWED IT LOOK AT THE

25     REASONABLE EXPECTATION ANALYSIS, THE KATZ ANALYSIS, AS A

```
1    TWO-PART TEST, WHETHER --

2           THE COURT:  WELL, WHAT DOES IT MATTER WHAT THE

3    ELEVENTH CIRCUIT AND THE FIFTH CIRCUIT DECIDE?  I'M IN

4    CALIFORNIA.  RIGHT?

5           MR. SCHENK:  WELL, JUDGE ILLSTON DISCUSSED HOW SHE

6    FOUND THE FIRST PANEL OPINION IN DAVIS TO BE PERSUASIVE.

7       OF COURSE IT'S NOT BINDING ON THIS COURT, BUT THE COURT

8    CAN LEARN FROM THE OPINIONS OF OTHER CIRCUITS THAT HAVE DEALT

9    WITH THIS PRECISE ISSUE.

10          THE COURT:  OKAY.  BUT ANSWER THE QUESTION.  IF

11   CALIFORNIA HAS RECOGNIZED A REASONABLE EXPECTATION OF PRIVACY

12   IN CELL SITE INFORMATION SUCH THAT THE STATE REQUIRES LAW

13   ENFORCEMENT TO GET A SEARCH WARRANT IN THIS STATE, DOES THAT IN

14   ANY WAY AFFECT WHAT A CALIFORNIA RESIDENT'S REASONABLE

15   EXPECTATION OF PRIVACY IS?

16          MR. SCHENK:  NO, IT DOES NOT AFFECT WHETHER THAT

17   INDIVIDUAL NOW HAS A REASONABLE EXPECTATION OF PRIVACY IN THE

18   TRANSFER OF INFORMATION FROM THEIR CELL PHONE TO A CELL PHONE

19   COMPANY AND THE GOVERNMENT'S ABILITY UNDER 2703(D) TO OBTAIN

20   THAT UNDER THE SPECIFIC AND ARTICULABLE FACTS STANDARD.

21          THE COURT:  DO YOU HAVE A VIEW ON THAT?

22          MS. LEONIDA:  YES.

23          THE COURT:  I THINK HE'S RIGHT.  WHAT'S THE ANSWER?

24   WHY DOES IT MATTER?  WE'RE IN SEPARATE AND PARALLEL SYSTEMS.

25   WHY DOES IT MATTER WHAT CALIFORNIA STATE REQUIRES?
```

1          MS. LEONIDA:  IT MATTERS, YOUR HONOR, BECAUSE IT GOES

2    TO THE REASONABLENESS OF THE SUBJECTIVE EXPECTATIONS OF PRIVACY

3    OF THE RESIDENTS OF CALIFORNIA.  EVERY CALIFORNIAN WHO LIVES IN

4    THE NORTHERN DISTRICT HAS BEEN TOLD BY THEIR STATE COURT OR

5    LEGISLATURE THAT THEY HAVE THIS REASONABLE EXPECTATION OF

6    PRIVACY, WHICH ADDS TO THE REASONABLENESS OF IT.

7          THEY HAVE A SUBJECTIVE EXPECTATION THAT THIS INFORMATION

8    IS PRIVATE, BEING TOLD BY THEIR STATE GOVERNMENT IN THE STATE

9    WHERE THEY LIVE, THAT IT IS, IT HAS TO INFORM NOT ONLY THE

10   SUBJECTIVE, BUT, AGAIN, WHETHER THAT'S A REASONABLE THING FOR

11   THEM TO THINK.

12         THE COURT:  LET ME -- HOW MUCH OF A GREATER BURDEN

13   WOULD IT BE TO REQUIRE A PROBABLE CAUSE SEARCH WARRANT,

14   ESPECIALLY FOR HISTORIC -- IF IT'S HISTORICAL INFORMATION, THEN

15   THAT MEANS THE GOVERNMENT ALREADY HAS SOME SENSE ABOUT THE

16   DATES, ALREADY HAS SOME SENSE ABOUT THE DEVICE, ALREADY HAS

17   SOME SENSE ABOUT THE OWNER OF THE DEVICE, ALREADY HAS SOME

18   SENSE OF WHAT THEY'RE LOOKING FOR, SO IT JUST SEEMS LIKE MAYBE

19   FOR PROSPECTIVE INFORMATION, THERE MIGHT BE MORE ONGOING

20   INVESTIGATION CONCERNS.

21         BUT WHY WOULD YOU NOT HAVE PROBABLE CAUSE TO GET

22   HISTORICAL, PAST INFORMATION?

23         MR. SCHENK:  A FEW ANSWERS TO THAT, YOUR HONOR.

24         THE COURT:  UM-HUM.

25         MR. SCHENK:  FIRST, IT IS A HEIGHTENED BURDEN.  IN

1    FACT, THAT'S WHAT WE'RE LITIGATING ABOUT.

2        THERE'S NO DOUBT THERE ARE GOING TO BE CASES, IN MY

3    EXPERIENCE THERE ARE, AND I'M SURE IF YOU ASKED OTHER

4    PROSECUTORS THERE ARE, WHERE WE HAVE SUFFICIENT INFORMATION --

5    IT'S AN EARLY STAGE OF THE INVESTIGATION INVESTIGATIVE TOOL,

6    THAT IS, TO OBTAIN CELL SITE LOCATION INFORMATION.

7        IF EVERY INVESTIGATIVE TOOL NOW SHIFTS TO THE PROBABLE

8    CAUSE STANDARD, WHAT DO WE DO TO DEVELOP PROBABLE CAUSE FOR

9    SEARCH WARRANTS?  IN SOME INSTANCES, CELL SITE LOCATION

10   INFORMATION IS INFORMATION THAT'S USED IN THE PROBABLE CAUSE

11   STATEMENT OF A SEARCH WARRANT.

12       BUT EVEN MORE, IT IGNORES THE STATUTORY SCHEME SET UP IN

13   2703, AND THAT IS TO SAY IT'S EASY TO GET PROBABLE CAUSE

14   SATISFIED, JUST DO THAT.  I MEAN, CONGRESS DID SPECIFICALLY SAY

15   THAT'S A LOWER STANDARD.

16       NOW, RAISING THE STANDARD AT THE TIME, AT THE TIME YOU

17   COULD OBTAIN IT WITH SUBPOENAS, NOW THEY'RE SAYING PUT THE

18   MAGISTRATE IN BETWEEN THE PHONE COMPANY AND THE PERSON, MEET

19   THIS NEW STANDARD.

20       BUT TO SAY IT'S NOT THAT ONEROUS TO MEET THE PROBABLE

21   CAUSE STANDARD AND, THEREFORE, THE GOVERNMENT SHOULD JUST GET A

22   WARRANT BEGS THE QUESTION, IS A WARRANT REQUIRED?  AND THE CASE

23   LAW, AND THE STATUTE ITSELF, ALL SAY THAT IT'S NOT.

24       THE COURT IS RIGHT, THERE ARE GOING TO BE SOME

25   INSTANCES --

```
1            THE COURT:  WOULD YOU -- I'M SORRY TO INTERRUPT YOU.

2     WOULD YOU THINK THAT THE BURDEN MIGHT BE SLIGHTLY MORE ONEROUS

3     FOR PROSPECTIVE CELL SITE INFORMATION THAN HISTORICAL?  IT

4     SEEMS LIKE WITH HISTORICAL, YOU'RE SORT OF AWARE OF AN

5     INCIDENT, YOU'RE AWARE OF THE DATE OF THAT INCIDENT AND YOU'RE

6     TRYING TO TRACK DOWN THAT INFORMATION, SO YOU ALREADY HAVE MORE

7     INFORMATION GOING FORWARD WHERE YOU MAY NOT KNOW WHO THIS

8     PERSON IS TALKING TO, WHAT THEY'RE ABOUT TO DO.

9          IS THERE A DIFFERENCE?

10           MR. SCHENK:  NO.  FOR ONGOING CONSPIRACIES OF

11    MULTIPLE DEFENDANTS, IT MAY BE THAT FOR ONE DEFENDANT, YOU

12    COULD MEET THE PROBABLE CAUSE STANDARD FOR HISTORIC AND FOR

13    PROSPECTIVE.  THEY MAY BE CONSPIRING WITH OTHER INDIVIDUALS

14    THAT YOU YET CANNOT MEET A PROBABLE CAUSE STANDARD, BUT YOU

15    COULD MEET THE SPECIFIC AND ARTICULABLE FACTS STANDARD

16    REGARDLESS OF WHETHER WHAT YOU'RE SEEKING IS HISTORIC OR

17    PROSPECTIVE, KEEPING IN MIND AGAIN THAT WHAT WE'RE APPEALING

18    TODAY IS MERELY HISTORIC.

19         BUT THERE ARE GOING TO BE CASES WHERE THE SAME

20    INVESTIGATION SATISFIES ONE STANDARD, THE LOWER SPECIFIC AND

21    ARTICULABLE FACTS, AND DOES NOT SATISFY PROBABLE CAUSE,

22    REGARDLESS OF THE TYPE OF LOCATION INFORMATION THAT THE

23    GOVERNMENT SEEKS.

24           THE COURT:  DO YOU HAVE A VIEW ON THAT?

25           MS. LEONIDA:  YES, YOUR HONOR.
```

1           IF IT DOESN'T RISE TO THE LEVEL OF PROBABLE CAUSE, THE

2     GOVERNMENT SHOULDN'T BE ENTITLED TO IT.

3           I MEAN, I UNDERSTAND THAT THIS IS VALUABLE INFORMATION AND

4     THEY USE IT ALL THE TIME AND THEY ASK FOR IT TENS OF THOUSANDS

5     OF TIMES EVERY YEAR.  BUT THAT DOESN'T CHANGE THE FOURTH

6     AMENDMENT ANALYSIS.

7           THE RILEY COURT HAD THE SAME ISSUE.  THE GOVERNMENT IN

8     THAT CASE SAID, "THIS IS REALLY USEFUL AND IT'S VALUABLE AND

9     THERE'S SO MUCH INFORMATION AND IT REALLY HELPS US INVESTIGATE

10    CRIMES," AND THAT'S ALL TRUE, BUT THAT DOESN'T HAVE ANY BEARING

11    ON THE FOURTH AMENDMENT ANALYSIS.

12          HERE THIS IS INFORMATION THAT IS PROTECTED BY THE FOURTH

13    AMENDMENT.

14          AND IT'S NOT THAT ONEROUS TO GET A WARRANT.  AS THE COURT

15    WAS JUST POINTING OUT, THIS INFORMATION EXISTS, IT'S IN THE

16    PAST, THERE'S NO URGENCY HERE, AND WARRANTS CAN BE ISSUED,

17    AGAIN, AS THE RILEY COURT NOTED, FAIRLY EASILY AND RAPIDLY.

18            THE COURT:  DO YOU -- IS THERE A REASON -- ARE THERE

19    OTHER PHONE CARRIERS FOR WHICH YOU'RE AWARE OF WHAT THEIR

20    PRIVACY POLICY IS?  IS THERE A REASON WHY YOU SELECTED

21    T-MOBILE, FOR EXAMPLE --

22            MR. SCHENK:  DO YOU MEAN --

23            THE COURT:  -- IN WHAT YOU PROVIDED?

24            MR. SCHENK:  YOU MEAN WHEN THE GOVERNMENT PUT THAT IN

25    THE BRIEF?

```
 1              THE COURT:  YEAH.

 2              MR. SCHENK:  I KNOW THAT WE HAVE AVAILABLE TO US THE

 3      PRIVACY POLICIES OF ALL OF THEM AND --

 4              THE COURT:  DO THEY ALL PROVIDE NOTICE OF CELL SITE

 5      INFORMATION COLLECTION AND RETENTION, OR NOT?

 6              MR. SCHENK:  MY RECOLLECTION IS THAT IN ONE WAY OR

 7      ANOTHER, THEY DO ALL INFORM THE INDIVIDUAL, THE CELL PHONE

 8      USER, THAT THE INFORMATION USED IS USED FOR MANY PURPOSES,

 9      INCLUDING LOCATION.

10              THE COURT:  OKAY.  BUT THEY'RE NOT ALL --

11              MR. SCHENK:  BUT I'D WANT TO --

12              THE COURT:  I'M SORRY.  GO AHEAD.

13              MR. SCHENK:  I'D WANT TO REREAD EACH OF THE OTHER

14      PRIVACY POLICIES BEFORE I FIRMLY COMMITTED TO THAT.  THAT'S MY

15      RECOLLECTION OF THE POLICY.

16              THE COURT:  BUT IT SEEMS THAT THE -- THERE'S

17      VAGUENESS AND SOME VARIANCE IN WHEN THAT INFORMATION IS

18      COLLECTED --

19              MR. SCHENK:  YES.

20              THE COURT:  -- IN TERMS OF THE DISCLOSURES FROM THE

21      CARRIERS.

22              MR. SCHENK:  YOU MEAN VARIANCE AMONG CARRIERS AND

23      WHEN THEY COLLECT AND HOW FREQUENTLY THEY COLLECT INFORMATION?

24              THE COURT:  OR WHAT THEY CHOOSE TO DISCLOSE IN THEIR

25      PRIVACY POLICY.
```

```
 1              MR. SCHENK:  THEY ALL --
 2              THE COURT:  ARE THEY JUST COLLECTING WHEN A TEXT DATA
 3     OR CALL IS SENT OR RECEIVED?  ARE THEY ALWAYS COLLECTING?
 4     THERE'S A LOT OF VAGUENESS AND VARIANCES.
 5              MR. SCHENK:  RIGHT.  THERE'S VARIETY AMONG THE
 6     CARRIERS IN WHAT THEIR PRIVACY POLICY SAYS, AS WELL AS WHAT
 7     THEY ACTUALLY COLLECT.
 8              THE COURT:  OTHER THAN -- I THINK IT WAS THE EFF
 9     BRIEF WENT THROUGH DIFFERENT STATE LEGISLATION AND STATE
10     SUPREME COURT CASES REGARDING REQUIRING PROBABLE CAUSE IN A
11     SEARCH WARRANT.
12          DO YOU KNOW OF ANY OTHER STATES THAT HAVE PENDING
13     LEGISLATION OR ANY UPDATE?  I MEAN, I THINK THEIR BRIEF WAS
14     FILED, LIKE, JUNE 15TH, SO IT'S NOT BEEN THAT MUCH TIME, BUT
15     IT'S BEEN A WEEK AND A HALF.
16          I DON'T KNOW IF YOU KNOW OF ANY OTHER UPDATES ON EITHER
17     CASES OR STATUTES.
18              MS. LEONIDA:  NOT IN ADDITION TO WHAT IS IN THE EFF
19     BRIEF.
20              THE COURT:  OKAY.  SO EVERYONE AGREES THAT A USER
21     CANNOT -- LET ME ASK MR. SCHENK.  WHAT ABOUT THE ARGUMENT THAT,
22     I THINK IT'S THE ACLU MAKES, THAT A USER CAN TURN LOCATION OFF,
23     BUT THE CARRIER IS STILL COLLECTING AND RETAINING THAT LOCATION
24     INFORMATION?  DO YOU THINK THAT USER DOESN'T HAVE A REASONABLE
25     EXPECTATION OF PRIVACY AS TO THEIR LOCATION?
```

```
1              MR. SCHENK:  I'M NOT --

2              THE COURT:  THEY HAVE AFFIRMATIVELY TURNED THE

3     LOCATION OFF.

4              MR. SCHENK:  I'M NOT FAMILIAR WITH THE PARTICULAR

5     TECHNOLOGY THAT THE ACLU OR EFF, WHICHEVER ONE IS MAKING THE

6     ARGUMENT, WHAT THEY'RE REFERRING TO THERE.

7          BUT THE INDIVIDUAL'S SPECIFIC EXPECTATION OF PRIVACY ISN'T

8     EITHER OF THE PORTIONS OF THE KATZ TEST THAT WOULD FIND WE NEED

9     A PROBABLE CAUSE STANDARD IN ORDER TO OBTAIN THIS INFORMATION.

10         THE IDEA THAT AN INDIVIDUAL MAKES AN AFFIRMATIVE ACT AT

11    ONE MOMENT IS ONLY SOMETHING THAT'S RELEVANT VIEWED COMPARED TO

12    WHAT PERIOD OF TIME THE GOVERNMENT WOULD BE ASKING FOR.

13         THE LOCATION, THE LOCATION DATA FOR A PERIOD OF DAYS OR

14    WEEKS OR MONTHS RELATIVE TO WHEN THAT ACT IS MADE, THAT DOESN'T

15    ADDRESS, THOUGH, THE OBJECTIVE STANDARD.  SO EVEN THAT ACTION

16    DOESN'T CREATE A PROBABLE CAUSE STANDARD OR A REASONABLE

17    EXPECTATION OF PRIVACY UNDER KATZ.

18             THE COURT:  WOULD YOU CONCEDE THAT THE COLLECTION BY

19     THE GOVERNMENT OF THE CELL SITE LOCATION INFORMATION, EVEN IF

20     IT'S HISTORICAL, IS MORE INVASIVE THAN GPS TRACKING?

21             MR. SCHENK:  IS MORE INVASIVE?

22             THE COURT:  UM-HUM.

23             MR. SCHENK:  NO.

24             THE COURT:  BECAUSE GPS IS TRACKING SOMEONE'S

25     MOVEMENT ON PUBLIC STREETS THAT IS VISIBLE TO ANYONE WHO'S
```

```
 1    OUTSIDE.

 2              MR. SCHENK:  THE -- IN TERMS OF PRECISION, I DON'T

 3    THINK THAT CELL SITE LOCATION INFORMATION IS AS PRECISE AS GPS.

 4         IF THE COURT'S QUESTION IS A GPS TRACKER ATTACHED TO A CAR

 5    VERSUS AN INDIVIDUAL CARRYING A PHONE --

 6              THE COURT:  ON THEIR BODY.

 7              MR. SCHENK:  -- WHICH ARE WE GOING TO GET MORE

 8    INFORMATION FROM, WELL, YES, OF COURSE YOU'LL GET MORE

 9    INFORMATION, MORE DATA POINTS, ON THE CELL PHONE.

10         THOUGH WHAT'S CURIOUS IS THE ARGUMENT THAT THE FEDERAL

11    PUBLIC DEFENDER AND THE ACLU MAKE IS ONE THEY WOULD NEVER

12    CONCEDE IN TRIAL, AND THAT IS THAT A PERSON IS HOLDING A PHONE.

13    RIGHT?  THAT'S AN ARGUMENT THAT WHEN THIS INFORMATION IS

14    ACTUALLY ADMITTED IN TRIAL, THE GOVERNMENT HAS TO MAKE THE NEXT

15    STEP OF PROOF.

16         BUT IN THIS INSTANCE, WE'RE ALL PRESUMING THAT THAT

17    INFORMATION IS NOT JUST OF WHERE THE PHONE IS, BUT IS ACTUALLY,

18    YOU KNOW, A DIARY OF THE PERSON OVER A PERIOD OF DAYS.

19         BUT, YES, OF COURSE THE PERSON HAS THE PHONE MORE THAN

20    THEY HAVE THEIR CAR, MOST PEOPLE AT LEAST DO, SO IT GIVES YOU

21    MORE DATA.

22              THE COURT:  IS THERE AN AGREEMENT ON HOW PRECISE THE

23    INFORMATION IS?  YOU RAISE PRECISION, WHICH I DID WANT TO

24    FOLLOW UP WITH.  I THINK THERE WAS -- OKAY.  SO THIS IS -- THIS

25    IS WHAT THE ACLU SAYS, THAT WITH CELL SITE INFORMATION, YOU CAN
```

1        IDENTIFY INDIVIDUAL FLOORS AND ROOMS WITHIN BUILDINGS.

2            DO YOU AGREE WITH THAT?

3                MR. SCHENK:  IT DEPENDS ON WHETHER SOMETHING CALLED A

4    FEMTOCELL IS BEING USED.

5            IN ALMOST NO INSTANCES CAN THE GOVERNMENT USE CELL SITE

6    LOCATION INFORMATION TO IDENTIFY THE PARTICULAR FLOOR IN A

7    PARTICULAR BUILDING THAT A PHONE WAS ON WHEN IT MADE A

8    PARTICULAR PHONE CALL.

9            THE EXCEPTION TO THAT, THOUGH, IS THIS TECHNOLOGY THAT I

10   JUST REFERRED TO.

11               THE COURT:  OKAY.  BUT YOU WOULD AGREE THAT CELL SITE

12   INFORMATION IS PRECISE ENOUGH TO TELL WHETHER SOMEONE IS IN THE

13   BUILDING, MAYBE NOT WHAT FLOOR OR WHAT ROOM, BUT THE FACT THAT

14   THEY'RE IN A BUILDING IS POSSIBLE?

15               MR. SCHENK:  IT'S POSSIBLE.  IT DEPENDS ON THE CITY

16   OR THE PARTICULAR TOWN OR LOCATION OF THE PHONE.  IN RURAL

17   AREAS WHERE THERE ARE FEWER TOWERS, THERE'S LESS PRECISE

18   INFORMATION.  IT'S ALL A FACTOR OF THE NUMBER OF TOWERS THAT

19   ARE IN AN AREA, THE NUMBER OF CARRIERS, THE NUMBER OF

20   OBSTRUCTIONS.

21           PHONES DON'T NECESSARILY USE THE CLOSEST TOWER TO THE

22   PHONE.  THEY MOST OF THE TIME DO, BUT I BELIEVE IT'S LINE OF

23   SIGHT TECHNOLOGY.

24           SO THERE ARE ALL KINDS OF FACTORS IN PLAY IN DETERMINING

25   HOW PRECISE LOCATION INFORMATION CAN BE, AND IT CERTAINLY IS

1  NOT SAFE TO SAY IN EVERY INSTANCE THE GOVERNMENT CAN TELL THAT

2  A CELL PHONE WAS IN A PARTICULAR BUILDING.  THAT'S NOT TRUE.

3          THE COURT:  CAN YOU -- WHAT ARE MICROCELLS,

4  PICOCELLS, AND FEMTOCELLS?

5          MR. SCHENK:  IT'S -- THE WAY I UNDERSTAND IT, IT'S

6  SOMETHING THAT REPLICATES A CELL TOWER.  SO IF AN INDIVIDUAL

7  LIVES IN A RURAL AREA AND GETS BAD CELL PHONE RECEPTION --

8          THE COURT:  WAIT, WHICH ONE?  ALL OF THEM, OR --

9          MR. SCHENK:  I THINK THAT THEY'RE WORDS FOR THE SAME

10  THING.

11          THE COURT:  OKAY.  GO AHEAD.  SORRY.

12          MR. SCHENK:  BUT THAT'S BEYOND THE TECHNOLOGICAL

13  UNDERSTANDING THAT I HAVE.

14          THE COURT:  OKAY.  GO AHEAD AND SAY, WHAT ARE

15  MICROCELLS, PICOCELLS, AND FEMTOCELLS?

16          MR. SCHENK:  IF SOMEONE LIVES IN A RURAL AREA AND HAS

17  BAD CELL PHONE RECEPTION, ONE WAY THEY CAN IMPROVE THEIR CELL

18  PHONE RECEPTION IS TO HAVE A FEMTOCELL, AND THAT'S SOMETHING

19  THAT'S REGISTERED TO THEIR HOME ADDRESSES AND IT INCREASES --

20  THEIR PHONE THEN USES THAT CELL -- THAT DEVICE AS A CELL TOWER.

21  IT MIMICS OR IS A MINIATURE CELL TOWER.

22      SO INSTEAD OF USING THE CELL TOWER THAT MAY BE NINE MILES

23  FROM THEIR HOME AND IN A VALLEY, THEY THEN USE THAT TECHNOLOGY,

24  AND BECAUSE THEY'RE USING THIS INDIVIDUAL FEMTOCELL AND THOSE

25  FEMTOCELLS ARE OFTEN REGISTERED WITH THE CARRIER, THE

1    GOVERNMENT WOULD THEN KNOW THEY WERE -- THAT THAT CALL WAS

2    PINGING OFF OF THAT TOWER, AND IN THAT INSTANCE THE GOVERNMENT

3    COULD SAY THEY WERE ON A PARTICULAR PLOT OF LAND IN A HOME

4    BECAUSE THE CELL, THE FEMTOCELL WAS REGISTERED TO THE CARRIER.

5         THE COURT:  AND YOU WOULD AGREE THAT OVER TIME, THE

6    PRECISION OF CELL SITE INFORMATION TO LOCATE AN INDIVIDUAL WITH

7    A DEVICE IS ONLY GOING TO GET MORE ACCURATE?

8         MR. SCHENK:  I CAN SAY IT HAS GOTTEN MORE ACCURATE UP

9    UNTIL THIS POINT, YES.

10        THE COURT:  UM-HUM.

11    DO YOU WANT TO COMMENT ANYTHING ABOUT PRECISION?

12        MS. LEONIDA:  YES, YOUR HONOR.

13    THESE MICRO-, PICO-, AND FEMTOCELLS I THINK ARE DIFFERENT

14    TYPES OF CELL TOWERS THAT COVER SMALLER AND SMALLER AREAS.  AND

15    THEY'RE NOT JUST LIMITED TO RURAL AREAS.  THEY'RE USED BY

16    OFFICES WHO WANT TO HAVE BETTER RECEPTION FOR THE PEOPLE IN

17    THEIR WAITING ROOM.  THEY'RE USED BY ALL KINDS OF PEOPLE, AND

18    THE CONGRESSIONAL TESTIMONY THAT WE'VE CITED, AS WELL AS THE

19    ACLU, MAKES THAT REALLY CLEAR.  IT'S NOT LIMITED TO RURAL

20    AREAS.

21    BUT I THINK THE MORE SALIENT POINT IS THAT THE GOVERNMENT

22    HAS NO IDEA WHAT INFORMATION THEY'RE GOING TO GET WHEN THEY

23    MAKE THESE REQUESTS.  THEY'RE NOT ASKING FOR CELL TOWERS THAT

24    ARE LIMITED TO A RANGE OF THREE MILES.  THEY'RE ASKING FOR

25    EVERY SINGLE PIECE OF CELL TOWER LOCATION INFORMATION FOR A TWO

1   MONTH PERIOD.

2       AND SO IF THEY ARE FOLLOWING SOMEBODY WHO GOES FROM A

3   SERIES OF MICROCELLS TO PICOCELLS TO FEMTOCELLS AND THEY'RE

4   TRACKING THEM EVERY MINUTE OF EVERY DAY FROM ROOM TO ROOM IN A

5   BUILDING, I -- HERE THE GOVERNMENT IS SAYING THAT THAT'S RARE,

6   BUT THAT'S NOT THE QUESTION.

7       THE QUESTION IS, WHAT DO THEY NEED TO SHOW BEFORE THEY CAN

8   ACCESS THIS INFORMATION?  AND THEY HAVE NO WAY OF KNOWING WHEN

9   THEY'RE ASKING FOR IT EXACTLY HOW PRECISE IT'S GOING TO BE, BUT

10  THEY'RE ACKNOWLEDGING HERE TODAY THAT NOT ONLY IT CAN BE THAT

11  PRECISE, BUT IT'S BECOMING MORE PRECISE.

12      AND GIVEN THE PROLIFERATION OF CELL PHONES, THERE'S NO

13  REASON TO THINK IT'S GOING TO STOP BECOMING MORE AND MORE

14  PRECISE AS TIME PASSES.

15      AGAIN, THE SUPREME COURT HAS MADE CLEAR SINCE 1983 THAT

16  THE RULES THAT A COURT ARTICULATES HAVE TO ACCOUNT FOR ADVANCES

17  IN TECHNOLOGY AND THIS IS EXACTLY THAT KIND OF ADVANCE.

18      THE COURT:  DO YOU THINK THE BURDEN SHOULD BE HIGHER

19  FOR CELL SITE INFORMATION THAT TRIANGULATES AND GIVES A MORE

20  EXACT LOCATION OF WHERE A CELL USER IS OR NOT?

21      MR. SCHENK:  NO.

22      THE COURT:  UM-HUM.

23      MR. SCHENK:  COUNSEL IS RIGHT.  I DIDN'T MEAN TO SAY

24  THAT FEMTOCELLS WERE ONLY USED IN RURAL AREAS.  I WAS GIVING

25  THE COURT AN EXAMPLE OF WHEN THEY WOULD BE USED.

1        BUT, NO, THE CASE LAW DOESN'T SAY THAT WHEN INFORMATION IS

2    TRANSFERRED TO A THIRD PARTY, THE GOVERNMENT CAN THEN GET IT

3    FOR SOMETHING LESS THAN PROBABLE CAUSE IF IT'S NOT PARTICULARLY

4    PRECISE.

5        PRECISION IS NOT THE FACT THAT CHANGES WHETHER PROBABLE

6    CAUSE FOR SPECIFIC AND ARTICULABLE FACTS IS THE STANDARD TO

7    OBTAIN THE INFORMATION.  THE FACT IS THE CASE LAW SAYS THAT

8    THIS IS NOT CONTENT, THIS IS INFORMATION IN THE HANDS OF A

9    THIRD PARTY, AND COURTS HAVE NEVER GONE TO THE PLACE OF

10   REQUIRING THE GOVERNMENT TO OBTAIN SEARCH WARRANTS FOR THIS

11   TYPE OF INFORMATION, THESE RECORDS, IN THE HANDS OF A THIRD

12   PARTY.  IT DOESN'T TURN ON PRECISION.

13       THE --

14       THE COURT:  WELL, CAN'T PRECISION EVENTUALLY EVER

15   INFLUENCE REASONABLE EXPECTATION OF PRIVACY?

16       MR. SCHENK:  CERTAINLY.  JUSTICE ALITO, THOUGH, IN

17   JONES SAID THAT'S THE PLACE FOR THE LEGISLATURE TO ACT, THE

18   ADVANCES IN TECHNOLOGY, THOUGH I'D ARGUE THAT'S WHAT THEY WERE

19   THINKING ABOUT WHEN THEY RAISED THE STANDARD TO SPECIFIC AND

20   ARTICULABLE FACTS.

21       BUT THE FACT THAT GPS WAS, IS, AS WE DISCUSSED A MOMENT

22   AGO, SO PRECISE AND GPS WAS NOT FOUND TO BE A SEARCH BASED ON

23   REASONABLE EXPECTATION OF PRIVACY, BUT RATHER BASED ON

24   TRESPASS, PROVIDES SOME GUIDANCE TO THIS IDEA THAT IF WE HAVE A

25   SITUATION WHERE THE GOVERNMENT IS SEEKING CELL SITE LOCATION

```
 1    INFORMATION AND IT'S GOING TO, LET'S SAY WE KNOW AHEAD OF TIME
 2    IT'S GOING TO BE VERY PRECISE, THAT ISN'T AN INSTANCE WHERE WE
 3    NEED TO THEN SEEK A WARRANT BECAUSE SOME CASE SAYS THAT
 4    PRECISION IS WHAT TURNS REASONABLE EXPECTATIONS OF PRIVACY.
 5    NO, THAT WASN'T FOUND IN JONES.  IN JONES, IT WAS BASED ON
 6    TRESPASS.
 7         BUT, YES, IS THE COURT RIGHT THAT AT SOME POINT COULD OUR
 8    IDEAS, OUR VIEWS EVOLVE?  OF COURSE IT'S THEORETICALLY
 9    POSSIBLE.
10         THIS ISN'T THE PROPER FORUM TO MAKE THOSE TYPES OF
11    DETERMINATIONS.  AT THIS FORUM, WE LOOK AT WHAT THE CURRENT
12    CASE LAW IS AND WHAT THE STATUTE SAYS AND THE GOVERNMENT IS
13    ENTITLED TO OBTAIN THE INFORMATION THAT IT SEEKS UNDER THE
14    CURRENT STATUTE AND UNDER THE CURRENT CASE LAW.
15         THE COURT:  AND YOUR ANSWER WOULD BE WE'RE SUPPOSED
16    TO ANTICIPATE CHANGES IN TECHNOLOGY?
17         MS. LEONIDA:  YES.
18         BUT ALSO, I DON'T THINK WE HAVE TO ANTICIPATE CHANGES IN
19    TECHNOLOGY FOR THE FOURTH AMENDMENT TO ATTACH TO THIS
20    INFORMATION AS IT EXISTS TODAY.  IN JONES, FIVE SUPREME COURT
21    JUSTICES FOUND THAT THE KATZ EXPECTATION OF PRIVACY WAS
22    VIOLATED BY LONG-TERM LOCATION MONITORING, IN THAT CASE 28
23    DAYS, MUCH SHORTER THAN THE 60 DAYS THAT THE GOVERNMENT IS
24    PROPOSING HERE, AND THAT'S -- YOU KNOW, THAT'S A DECISION THAT
25    CAME OUT JUST A COUPLE OF YEARS AGO.
```

```
 1        I DON'T THINK THAT WE'RE -- I DON'T THINK WE HAVE TO

 2   ANTICIPATE THAT EVERY ROOM HAS A PICOCELL BEFORE THE FOURTH

 3   AMENDMENT APPLIES.  THIS IS INFORMATION THAT THE GOVERNMENT IS

 4   GATHERING NOW AND THAT PEOPLE HAVE AN EXPECTATION OF PRIVACY IN

 5   RIGHT NOW.  AND IT IS NOT -- THAT EXPECTATION IS NOT STRIPPED

 6   BY THE FACT THAT A THIRD PARTY KEEPS THESE BUSINESS RECORDS.

 7        IN A NUMBER OF CASES THAT WE'VE CITED, IN KATZ, IN JONES,

 8   IN FERGUSON, IN FORRESTER OR WARSHAK, THE FACT THAT A THIRD

 9   PARTY HAS ACCESS TO INFORMATION DOES NOT STRIP THAT INFORMATION

10   OF FOURTH AMENDMENT PROTECTIONS.

11        I THINK REFERRING TO IT AS A THIRD PARTY BUSINESS RECORD

12   BEGS THE QUESTION OF WHETHER THIS INFORMATION IS PROTECTED BY

13   THE FOURTH AMENDMENT, AND CELL SITE LOCATION INFORMATION

14   ABSOLUTELY HAS TO BE.

15            THE COURT:  LET ME -- DOES IT MAKE A DIFFERENCE

16   WHETHER AN AFFIRMATIVE CALL OR TEXT OR DATA IS BEING SENT BY

17   THE DEVICE OWNER OR WHETHER SOMEONE IS SENDING A TEXT, PHONE

18   CALL, OR MESSAGE TO THAT DEVICE OWNER?  DO YOU SEE WHAT I'M

19   SAYING?  LIKE IS THERE LESS VOLUNTARY CONVEYANCE WHEN YOU DON'T

20   CONTROL WHAT'S BEING SENT TO YOU?  YOU MAY NOT EVEN KNOW WHO'S

21   SENDING IT.  YOU MAY NOT HAVE CONSENTED TO THAT PERSON

22   CONTACTING YOU.

23        DOES THAT -- IS THAT A DISTINCTION THAT SHOULD MATTER, OR

24   NOT?  WOULD THAT JUST BE MORE CONFUSING?

25            MS. LEONIDA:  I THINK CERTAINLY THAT IS LESS
```

1    VOLUNTARY.  IF YOU DON'T KNOW WHO'S SENDING YOU A TEXT, YOU

2    DON'T EXPECT ONE OR DON'T WANT THE CALL THAT YOU'RE RECEIVING

3    OR IT GOES TO VOICEMAIL AND YOU DON'T EVEN KNOW THAT YOU'VE

4    RECEIVED A CALL, THAT'S CERTAINLY LESS VOLUNTARY.

5         BUT I DON'T THINK THAT THAT CAN BE SEPARATED FROM THE

6    VOLUNTARINESS ANALYSIS.  IN OTHER WORDS, THAT IS PART OF WHAT

7    RENDERS HISTORICAL CELL SITE LOCATION INFORMATION NOT

8    VOLUNTARILY CONVEYED, BUT RATHER, AS FORRESTER CHARACTERIZED

9    E-MAIL TRANSMISSIONS, INFORMATION THAT IS PASSIVELY CONVEYED TO

10   A THIRD PARTY, BUT NOT TO ACHIEVE YOUR PURPOSE.

11        AGAIN, THE PERSON WHO CARRIES A CELL PHONE IS NOT

12   INTENDING FOR IT TO BE USED AS A TRACKING DEVICE.  THEY'RE NOT

13   ASKING THE PHONE COMPANY TO MAINTAIN THESE RECORDS.

14        THE PURPOSE OF THE CELL PHONE IS TO MAKE THE CALL, AND THE

15   FACT THAT THE PHONE COMPANY MAINTAINS THESE RECORDS WHETHER OR

16   NOT THE USER WANTS THEM TO AND WHETHER OR NOT THE USER IS

17   ACTIVELY ENGAGED IN USING THE PHONE OR WANTS TO BE DOES GO TO

18   VOLUNTARINESS AND DISTINGUISHES THIS FROM CASES LIKE SMITH AND

19   LIKE MILLER.

20        THE COURT:  DO YOU WANT TO RESPOND TO THAT, THAT IT'S

21   A LESS VOLUNTARY CONVEYANCE?  IF YOU HAD NO KNOWLEDGE OF WHO IT

22   IS THAT'S SENDING YOU THAT TEXT OR THAT PHONE CALL, YOU NEVER

23   AUTHORIZED IT, YOU HAD NO KNOWLEDGE THAT YOU WERE GOING TO

24   RECEIVE IT, DOES THAT IN ANY WAY UNDERMINE THE VOLUNTARINESS OF

25   THE CONVEYANCE OF THE CELL SITE INFORMATION?

1          MR. SCHENK:  VOLUNTARINESS AS A CONCEPT CAME IN IN

2     SMITH AND MILLER BECAUSE IT WAS INFORMATION THAT THE COMPANIES,

3     THE BANKS AND THE PHONE COMPANIES, WERE REQUIRED, COMPELLED TO

4     MAINTAIN AT THE GOVERNMENT'S REQUEST.

5          IN CASES WHERE THAT INFORMATION, LIKE THIS ONE, IS NOT

6     INFORMATION THAT THE PHONE COMPANIES ARE MAINTAINING AT THE

7     GOVERNMENT'S REQUEST, I DON'T THINK VOLUNTARINESS TURNS ON

8     WHETHER PROBABLE CAUSE APPLIES OR NOT.

9          THE COURT:  WELL, SMITH WASN'T -- THE BANK -- IN

10    MILLER, THE BANK WAS KEEPING INFORMATION AS REQUIRED BY FEDERAL

11    LAW.

12         BUT THAT'S NOT THE CASE IN SMITH.  IN SMITH, THE PHONE

13    RECORDS WERE BEING KEPT BY THE PHONE COMPANY JUST TO MAKE

14    MONEY, TO BILL THE USER.  IT WAS NOT, YOU KNOW, UNDER

15    COMPULSION OF THE FEDERAL GOVERNMENT.

16         MR. SCHENK:  I APOLOGIZE.  MY RECOLLECTION WAS THAT

17    THE GOVERNMENT ASKED THE PHONE COMPANY TO MAINTAIN THOSE

18    RECORDS.

19         IN THE THIRD CIRCUIT'S DECISION ON THIS ISSUE --

20         THE COURT:  YEAH.

21         MR. SCHENK:  -- THEY FOUND THE INFORMATION, THE

22    TWO -- IT WAS A THREE-JUDGE OPINION, BUT TWO, ONE WAS TASHIMA,

23    CONCURRED, FOUND THAT THEY QUESTIONED WHETHER IT WAS

24    VOLUNTARILY CONVEYED, THAT THE PRIVACY POLICY IS VERY LONG AND

25    THEY DIDN'T KNOW WHETHER PEOPLE NECESSARILY READ THAT

1    INFORMATION, AND THEY STILL FOUND THAT PROBABLE CAUSE WASN'T

2    NECESSARY.

3          THE COURT:  BUT ISN'T IT DIFFERENT TO SAY, "I WANT

4    BANKING SERVICES, HERE ARE MY RECORDS" TO THE BANK, "YOU'RE

5    FEDERALLY REQUIRED TO KEEP THESE RECORDS," OR "I WANT TO BE

6    ABLE TO MAKE PHONE CALLS FROM MY HOME LANDLINE, LET ME DIAL

7    THESE NUMBERS AND GO OUT."

8          THERE'S A LITTLE BIT OF A DIFFERENT AFFIRMATIVE ACT THAT'S

9    BEING DONE BY THE USER IN THOSE INSTANCES VERSUS I'M PASSIVELY

10   RECEIVING A CALL FROM A TELEMARKETER THAT I DON'T WANT TO

11   RECEIVE AND I NEVER AUTHORIZED THEM TO USE THIS NUMBER.

12         IS THERE A DIFFERENCE?

13         MR. SCHENK:  YES.  I UNDERSTAND THE POINT THE COURT

14   IS MAKING.

15         THE COURT:  YEAH.

16         MR. SCHENK:  IT CERTAINLY FEELS LIKE IT'S A DIFFERENT

17   AFFIRMATIVE ACT BY THE PERSON HOLDING THE PHONE IF THEY CAN BE

18   CALLED AND, AS A RESULT, ALL THIS DATA IS CREATED, AS OPPOSED

19   TO THEM MAKING THE AFFIRMATIVE ACT OF CALLING.

20         THE COURT:  UM-HUM.

21         MR. SCHENK:  I JUST DON'T SEE, THOUGH, THAT

22   DISTINCTION BEARING OUT IN THE CASE LAW THAT WOULD REQUIRE A

23   WARRANT TO OBTAIN THE PINGS ON IT, THE INFORMATION FOR PEOPLE

24   CALLING YOU, BUT SPECIFIC AND ARTICULABLE FACTS IS AN

25   ACCEPTABLE STANDARD FOR ALL OF THE INSTANCES WHEN LOCATION DATA

1    IS CREATED BASED UPON THE USER PRESSING A BUTTON ON THEIR

2    PHONE, MAKING SOME AFFIRMATIVE ACT.

3         THE STATUTE DOESN'T DRAW THAT LINE AND THE OTHER CIRCUITS

4    THAT HAVE DEALT WITH THE ISSUE HAVEN'T DRAWN THE LINE THERE.

5         BUT I SEE THE POINT YOUR HONOR IS MAKING.  I JUST THINK AT

6    THIS POINT THOSE ARE ALL RECORDS THAT ARE MAINTAINED BY THE

7    PHONE COMPANY AND, AS A RESULT, ARE 2703(D) RECORDS THAT THE

8    GOVERNMENT CAN GET UNDER SPECIFIC AND ARTICULABLE FACTS.

9         THE COURT:  BUT WOULD THAT BE A WORKABLE TEST FOR THE

10   GOVERNMENT TO SAY YOU CAN GET ALL -- I MEAN, I GUESS IT WOULD

11   BE A DIFFERENT SORT OF A PEN REGISTER VERSUS TRAP AND TRACE,

12   RIGHT?  YOU CAN GET ALL AFFIRMATIVELY SENT INFORMATION BY THE

13   USER.

14        MR. SCHENK:  THE COURT WOULD BE FINDING THE STORED

15   COMMUNICATIONS ACT, THIS PART OF IT, UNCONSTITUTIONAL IF IT

16   MADE THE GOVERNMENT DRAW THAT LINE BECAUSE THAT LINE IS NOT

17   INHERENT IN THE STATUTE.

18        THE STATUTE TALKS ABOUT OBTAINING RECORDS OF THE PHONE

19   COMPANY FROM A SPECIFIC AND ARTICULABLE FACTS STANDARD, AND TO

20   SHAVE THE STATUTE IN THAT WAY WOULD ESSENTIALLY BE SAYING

21   THINGS THAT THIS STATUTE ENTITLES YOU TO, YOU'RE ACTUALLY NOT

22   ENTITLED TO BECAUSE THERE ARE ADDITIONAL PRIVACY PROTECTIONS TO

23   A PORTION OF THOSE RECORDS.

24        THE COURT:  OKAY.  I'M GOING TO GIVE YOU THE LAST

25   WORD AND THEN -- I'M SORRY, I LOST TRACK OF THE TIME.  I'LL

1    GIVE YOU THE LAST WORD AND THEN I'M GOING TO ASK YOU ACTUALLY

2    TO STEP OUTSIDE, AND ANYONE ELSE WHO IS NOT ENTITLED TO HAVE

3    SEALED INFORMATION TO PLEASE STEP OUTSIDE.  I DON'T KNOW WHO

4    THAT IS IN HERE.

5         BUT GO AHEAD, PLEASE.

6         MS. LEONIDA:  THANK YOU, YOUR HONOR.

7         JUST TO BACK UP TO AN ARGUMENT THE GOVERNMENT MADE ABOUT

8    THE IMPORTANCE OF THE RECORDS BEING MANDATED, NOT ONLY WERE THE

9    RECORDS IN SMITH NOT MANDATED BY THE GOVERNMENT, BUT MILLER AT

10   PAGE 443 EXPRESSLY SAYS THAT WHETHER THE GOVERNMENT MANDATES

11   THE BANK KEEPING THE RECORDS IS COMPLETELY IRRELEVANT AND THE

12   VOLUNTARINESS IS THE QUESTION, VOLUNTARINESS, AND THE

13   EXPECTATION OF PRIVACY.

14        AND IN THIS CASE -- BEFORE I GO THERE -- AND THE THIRD

15   CIRCUIT, I WANTED TO BE CLEAR, THE THIRD CIRCUIT NOT ONLY FOUND

16   THAT THE INFORMATION, CELL SITE INFORMATION WASN'T CONVEYED

17   VOLUNTARILY, BUT THAT DECISION PREDATED THE JONES DECISION, SO

18   I DON'T THINK THAT A READING OF THAT DECISION MAKES IT CLEAR

19   THAT IT MIGHT HAVE COME OUT DIFFERENTLY IF JONES HAD ALREADY

20   BEEN DECIDED.  A LOT OF WHAT THEY SAY IS COMPLETELY

21   INCONSISTENT WITH THE JONES CONCURRENCES.

22        THE COURT:  UM-HUM.  I DIDN'T UNDERSTAND HOW THE

23   THIRD CIRCUIT ORDER WORKS.  THE GOVERNMENT TRIES TO GET A PEN

24   REGISTER AND THEN IF IT'S DENIED, THEN THEY COME BACK WITH A

25   SEARCH WARRANT APPLICATION?  I -- IT JUST SEEMS LIKE IT LEAVES

1    IT TO THE DISCRETION OF THE MAGISTRATE JUDGE TO DECIDE WHICH

2    PROCESS IS THE RIGHT ONE FOR THAT ONE PARTICULAR CASE.

3         HOW IS THAT SUPPOSED TO WORK?  I WASN'T CLEAR.

4         MS. LEONIDA:  I THINK THE THIRD CIRCUIT DID SAY THAT

5    UNDER THE STORED COMMUNICATIONS ACT, THE COURT HAS -- THE

6    MAGISTRATE HAS THE DISCRETION TO REQUIRE A WARRANT.

7         AND THAT BRINGS ME TO THE LAST ISSUE THAT I WANTED TO

8    ADDRESS IN RESPONSE TO THE COURT'S CONCERN.

9         THE COURT:  CAN I ASK YOU A QUESTION AND THEN I'LL

10   LET YOU DO THAT?  IS THE GOVERNMENT THEN SUPPOSED TO CONTACT

11   THE MAGISTRATE JUDGE AND SAY, "HERE IS OUR SITUATION, WHICH ONE

12   ARE YOU GOING TO REQUIRE?"  OR THEY HAVE TO GO IN WITH THE PEN

13   REGISTER FIRST AND THEN COME BACK WITH THE SEARCH WARRANT

14   APPLICATION IF IT GETS DENIED?  I'M JUST NOT CLEAR HOW THAT'S

15   GOING TO WORK.

16        MAYBE YOU MIGHT KNOW THAT, TOO.  IS THERE SUPPOSED TO BE

17   AN INITIAL CONSULTATION TO UNDERSTAND WHICH ROUTE TO PURSUE UP

18   FRONT?

19        MS. LEONIDA:  THE THIRD CIRCUIT OPINION WASN'T CLEAR

20   ABOUT, GOING FORWARD, WHAT THE STANDARD IS.

21        THE COURT:  OKAY.

22        MS. LEONIDA:  BUT IF -- I IMAGINE EITHER OF THOSE

23   THINGS COULD HAPPEN.  THE GOVERNMENT COULD GET -- APPLY FOR A

24   SEARCH WARRANT BASED ON PROBABLE CAUSE OR THEY COULD TRY TO GET

25   A 2703(D) ORDER, FAIL, AND THEN TRY TO ACQUIRE ENOUGH

 1        INFORMATION TO APPLY AGAIN UNDER THE PROBABLE CAUSE STANDARD.

 2              THE COURT:  OKAY.  DO YOU HAVE A VIEW ON THAT, HOW

 3        THAT'S SUPPOSED TO WORK?

 4              MR. SCHENK:  JUDGE TASHIMA WROTE THAT THAT'S

 5        UNWORKABLE, THAT THE IDEA THAT A MAGISTRATE JUDGE WOULD

 6        HAPHAZARDLY SAY, "IN SOME INSTANCES I WANT PROBABLE CAUSE AND

 7        IN OTHERS I WANT SPECIFIC AND ARTICULABLE FACTS" IS AGAINST THE

 8        SPIRIT OF THE STATUTE AND, IN FACT, THE SOLUTION SUGGESTED WAS

 9        THE GOVERNMENT COULD PRESENT SPECIFIC AND ARTICULABLE FACTS AND

10        IF THERE WAS SOME SPECIFIC REASON WHY THE GOVERNMENT HAD NOT

11        MET THAT STANDARD, THEN THE MAGISTRATE, IN JUDGE TASHIMA'S

12        VIEW, COULD ASK THE GOVERNMENT FOR MORE FACTS, FOR MORE

13        INFORMATION.

14              BUT TO ANSWER THE COURT'S DIRECT QUESTION, I DON'T KNOW

15        HOW THAT'S SUPPOSED TO WORK.

16              THAT ISN'T WHAT THE STATUTE SAYS.  THAT IS, THAT THERE'S

17        NO SCHEME SET UP WHERE THERE IS AN INITIAL CONSULTATION AND THE

18        MAGISTRATE TELLS THE GOVERNMENT, "THIS SOUNDS LIKE A PROBABLE

19        CAUSE CASE TO ME" OR "THIS SOUNDS LIKE A SPECIFIC AND

20        ARTICULABLE FACTS CASE."

21              THE STATUTE LEAVES IT UP TO THE DISCRETION OF THE

22        GOVERNMENT TO SEEK IT UNDER ONE OF THOSE TWO, AND IT -- WHAT

23        JUDGE LLOYD DID IN THIS CASE WAS NOT SAY, "I THINK THAT THIS IS

24        A CASE THAT REQUIRES PROBABLE CAUSE."  JUDGE LLOYD SAID, "I

25        DON'T THINK YOU CAN GET THIS TYPE OF INFORMATION WITHOUT

 1    PROVIDING PROBABLE CAUSE INFORMATION."  HE THOUGHT THAT THIS

 2    INFORMATION WAS UNCONSTITUTIONAL UNDER THE FOURTH AMENDMENT

 3    AND, THEREFORE, REQUIRED A PROBABLE CAUSE SEARCH WARRANT.

 4         SO OF THE -- THE QUESTION BEFORE THE COURT I DON'T THINK

 5    SHOULD BE HOW TO WORK THE TWO STANDARDS IN 2703(D).  I THINK

 6    THAT THAT'S SOMETHING THAT THE GOVERNMENT IS ABLE TO SUBMIT

 7    UNDER SPECIFIC AND ARTICULABLE FACTS AND HAVE MAGISTRATES SIGN.

 8         THE COURT:  OKAY.  I'M GOING TO LET YOU HAVE THE LAST

 9    WORD AND THEN I'M GOING TO ASK YOU TO STEP OUTSIDE.  I HAVE

10    JUST A COUPLE OF QUICK QUESTIONS FOR THE GOVERNMENT.

11         MS. LEONIDA:  THANK YOU, YOUR HONOR.

12    I DID WANT TO TURN TO THE STORED COMMUNICATIONS ACT.

13         THE COURT:  OKAY.  GO AHEAD.

14         MS. LEONIDA:  OBVIOUSLY THE STORED COMMUNICATIONS ACT

15    CANNOT STRIP INFORMATION OF FOURTH AMENDMENT PROTECTION WHERE

16    IT EXISTS, AS WE CONTEND IT DOES HERE.

17         BUT I ALSO DON'T THINK THAT THE STORED COMMUNICATIONS ACT

18    IS TRYING TO DO THAT.  THIS IS NOT A FACIAL CHALLENGE TO THE

19    STORED COMMUNICATIONS ACT.

20         ON MONDAY THE SUPREME COURT DECIDED CITY OF LOS ANGELES

21    VERSUS PATEL, AND AT PAGE 5 WROTE THAT A FACIAL CHALLENGE IS AN

22    ATTACK ON A STATUTE ITSELF, AS OPPOSED TO A PARTICULAR

23    APPLICATION.

24         AND WHAT WE'RE ATTACKING HERE IS THE APPLICATION OF THE

25    STORED COMMUNICATION ACT TO GET CELL SITE LOCATION INFORMATION,

1       WHICH WAS NOT CONTEMPLATED BY THE ACT AS JUDGE ILLSTON FOUND.

2            IF THE COURT LOOKS AT THE LEGISLATIVE HISTORY, THERE IS

3       NOTHING IN THERE THAT WOULD SUGGEST THAT THE STORED

4       COMMUNICATIONS ACT INTENDED TO COVER HISTORICAL CELL SITE

5       LOCATION INFORMATION, PARTICULARLY THE 2010 HEARING TESTIMONY

6       MAKES IT CLEAR THAT THAT WAS NOT THE POINT OF THE STORED

7       COMMUNICATIONS ACT, ESPECIALLY NOT WHEN IT WAS PASSED IN 1986.

8            BECAUSE HISTORICAL CELL SITE LOCATION INFORMATION IS

9       PROTECTED BY THE FOURTH AMENDMENT AND NOT COVERED BY THE ACT,

10      THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE MAKES IT CLEAR THAT

11      THE COURT CAN REQUIRE A WARRANT WITHOUT HAVING TO SAY THAT THE

12      STORED COMMUNICATIONS ACT IS UNCONSTITUTIONAL, AND THAT'S WHAT

13      WE BELIEVE THE COURT SHOULD DO.

14            THE COURT:  DO YOU WANT TO RESPOND?  I MEAN, THE

15       STORED COMMUNICATIONS ACT DOES SAY THAT THAT INFORMATION CAN BE

16       SOUGHT BY A WARRANT, SO, I MEAN, THAT'S IN THE STATUTE.

17            BUT WHAT ABOUT THE SECTION THAT JUST REQUIRES SPECIFIC AND

18      ARTICULABLE FACTS?

19              MS. LEONIDA:  THAT SECTION -- THAT SECTION DOESN'T --

20              THE COURT:  IS THAT SUPERFLUOUS, OR --

21              MS. LEONIDA:  NOT SUPERFLUOUS, BUT IT'S --

22              THE COURT:  OKAY.

23              MS. LEONIDA:  I BELIEVE THAT A READING OF THE

24      LEGISLATIVE HISTORY SHOWS THAT THAT SECTION WAS NOT INTENDED TO

25      APPLY TO HISTORICAL CELL SITE LOCATION INFORMATION.

1        AND I THINK ALSO LOOKING AT THE MAY/SHALL/ONLY IF LANGUAGE

2   OF THAT SECTION ALSO ALLOWS THE COURT TO REQUIRE A WARRANT FOR

3   THAT KIND OF INFORMATION.

4        THE COURT:  UM-HUM.

5        MS. LEONIDA:  HISTORICAL CELL SITE LOCATION

6   INFORMATION IS NOT THE SAME AS SUBSCRIBER INFORMATION.  IT'S

7   NOT WHOSE PHONE IT IS AND WHAT ADDRESS THE BILLS GO TO.

8        IT IS -- AS WE'VE ALL BEEN TALKING ABOUT, IT'S A

9   COMPREHENSIVE, DETAILED PICTURE OF WHERE PEOPLE GO EVERY DAY

10  AND EVERY NIGHT FOR, IN THIS CASE, A TWO MONTH PERIOD.

11       AND I DON'T THINK THAT 2703(D), BY ANY READING, WAS

12  INTENDED TO ABROGATE THE FOURTH AMENDMENT TO SAY THAT YOU CAN

13  GET THAT INFORMATION ON LESS THAN A SHOWING OF PROBABLE CAUSE.

14       THE COURT:  UM-HUM.  WELL, THEN, LET ME ASK

15  MR. SCHENK, WHY WOULD I HAVE TO DECLARE THE STORED

16  COMMUNICATIONS ACT UNCONSTITUTIONAL IF THERE IS A PROVISION

17  THAT SAYS YOU CAN GET THIS INFORMATION THROUGH A WARRANT?

18       MR. SCHENK:  BECAUSE THERE'S A PROVISION THAT SAYS

19  YOU CAN GET IT THROUGH SPECIFIC AND ARTICULABLE FACTS.  THE

20  LEGISLATIVE HISTORY OF CALEA INCLUDED DISCUSSIONS OF LOCATION

21  INFORMATION.

22       FBI DIRECTOR LOUIS FREEH, THOMAS WHEELER, WHO WAS WITH A

23  TRADE GROUP, I THINK THE GROUP WAS CALLED THE CELLULAR

24  INDUSTRY -- I'M SORRY -- CELLULAR TELECOMMUNICATIONS INDUSTRY

25  ASSOCIATION, ALSO TALKED ABOUT THAT TYPE OF LOCATION

1       INFORMATION.

2           SO TO SAY THAT SPECIFIC AND ARTICULABLE FACTS IS ACTUALLY

3       NOT THE RIGHT STANDARD TO OBTAIN LOCATION INFORMATION BECAUSE,

4       AS COUNSEL IS ARGUING, LOCATION INFORMATION IS CONTENT OR

5       QUASI-CONTENT GOES SOMEWHERE THAT NO COURT HAS GONE AND FINDS

6       THAT THE STATUTE IS UNCONSTITUTIONAL BECAUSE IT GIVES THE

7       GOVERNMENT THE AUTHORITY TO OBTAIN RECORDS, INCLUDING LOCATION

8       INFORMATION, UNDER A SHOWING OF SPECIFIC AND ARTICULABLE FACTS,

9       AND IF THAT ISN'T TRUE, THE REASON IT ISN'T TRUE IS BECAUSE

10      THAT VIOLATES THE FOURTH AMENDMENT AND, THEREFORE, THE COURT

11      WOULD BE DECLARING THIS ACT UNCONSTITUTIONAL.

12          THE COURT:  ALL RIGHT.  I SAID I'D GIVE YOU THE LAST

13      WORD.  I'M GOING TO GIVE YOU THE LAST WORD AND THEN I'M GOING

14      TO ASK YOU TO STEP OUTSIDE, PLEASE.

15          MS. LEONIDA:  I'LL TRY TO MAKE MY LAST WORD SHORT.

16          THE COURT:  OKAY.

17          MS. LEONIDA:  JUST TWO THINGS.

18          THE COURT:  YES.

19          MS. LEONIDA:  FIRST, I MAINTAIN, AND I'M SURE THE

20      COURT HAS READ THE LEGISLATIVE HISTORY, THE STORED

21      COMMUNICATIONS ACT, 2703(D), IS NOT INTENDED TO COVER

22      HISTORICAL CELL SITE LOCATION INFORMATION.

23          BUT EVEN IF IT WERE, THAT SECTION, BY ITS TERMS, SAYS THAT

24      A WARRANT MAY BE ISSUED, NOT SHALL BE ISSUED, AND THAT IT SHALL

25      BE ISSUED ONLY IF THE GOVERNMENT ENTITY OFFERS SPECIFIC AND

1    ARTICULABLE FACTS.

2         SO I THINK THE COMBINATION OF THE LANGUAGE OF "MAY BE" AND

3    "SHALL BE ISSUED ONLY IF" CLEARLY GIVES THE COURT DISCRETION TO

4    REQUIRE A WARRANT FOR THIS INFORMATION.

5              THE COURT:  OKAY.  THANK YOU.  THANK YOU VERY MUCH.

6         I'M GOING TO ASK ANYONE WHO IS NOT ENTITLED TO SEE THE

7    SEALED APPLICATION TO PLEASE STEP OUTSIDE.  THANK YOU.

8         (PAUSE IN PROCEEDINGS.)

9         **(PAGES 49-56 UNDER SEAL.)**

10   ///

11   ///

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  JULY 24, 2015

19

20

21

22

23

24

25